## PEOPLE v. GONZALES.

## Cr. No. 477; March 28, 1899.

### 56 Pac. 804.

**Robbery—Information.**—A Variance Between the Name of the owner of the property, as given in an information for robbery and as shown in evidence, is immaterial.

**Robbery—Evidence.**—In a Prosecution for Robbery, the Owner of the property testified that defendant knocked him down, rendering him insensible, and that on recovering consciousness his purse and watch were missing. Another witness testified that he saw defendant holding the owner of the property on the ground. No one distinctly saw defendant rifle the latter's pockets, nor was the property found in defendant's possession. Held, that a conviction was justified.

**Criminal Law—Instructions—Appeal.**—Where the Court, of its own motion, gives an instruction based on a contention which it states was made on the trial, it cannot be presumed on appeal, in the absence of such fact being affirmatively shown by a bill of exceptions, that the contention was not made.

APPEAL from Superior Court, Santa Clara County.

Jack Gonzales was convicted of robbery, and he appeals. Affirmed.

H. E. Wilcox and D. M. Burnett for appellant; Attorney General Ford for the people.

PER CURIAM.—Gonzales (the appellant here) and one Fernandez were charged by information with the crime of robbery, committed by forcibly taking from one P. Santonette a brass watch and also the sum of $40 in money, the personal property of said P. Santonette. Gonzales was tried separately, and convicted. At the trial it appeared that the true name of the person called P. Santonette in the information is Peter Latonette. He testified, however, that he is known by the name of Pete Santonette, and was so known to Gonzales at the time of the alleged robbery, and gave that as his name on the preliminary examination of this case. It further appeared from his testimony that he came from his residence in the Santa Cruz mountains to the city of San Jose "for amusement and rest," and to promote these objects he formed the acquaintance, on the night of the al-

leged robbery, of said Gonzales and Fernandez, and also of one Pitts. All took several drinks at the expense of Santonette, after which, as the four persons named were walking along one of the streets of the city about the hour of 12 midnight—Pitts being a few paces behind the others—Santonette received a blow on the head, struck by Gonzales, and fell to the ground, where he remained insensible about fifteen minutes. When he recovered consciousness, he was alone, and then missed his purse, containing $40, which he had carried in his pocket, and his brass watch, which he wore when he was knocked down. He immediately complained to the police. Said Pitts testified: That a scuffle occurred between Santonette and Gonzales. He saw · Gonzales holding the former on the ground. "I can't swear positively that he went through the man's pockets, but the best of my knowledge is that he did. I believe this from the way they acted. It was so dark I could not see well." That they left Santonette lying on the ground where he fell. A certain police officer testified to a declaration of Gonzales to the effect that Santonette insulted him, and he (Gonzales) knocked him down. Rosia Garcia, a witness for defendant, testified that Pitts came to her house about 1:30 A. M. of the night in question, and said he and Gonzales had robbed a man; that he (Pitts) struck him, and Gonzales "went through his pockets." Other evidence produced on either side need not be stated. It must be assumed, in support of the verdict, that the jury found the testimony on behalf of the prosecution to be true. Among the instructions of the court to the jury was the following matter: "It is contended in this case that the witness Pitts was an accomplice in the commission of a robbery, if it was committed, and therefore his testimony should not be considered by the jury, unless corroborated by other facts and circumstances in the case." The court then stated to the jury the rule forbidding a conviction on the uncorroborated testimony of an accomplice, in the language of section 1111 of the Penal Code.

1. It may be, as defendant claims, that the name of the owner was a necessary part of the description of the property taken (People v. Hughes, 41 Cal. 234); but no objection to the information was taken, by demurrer or otherwise. It was no material variance when it appeared in evidence

that his true name was something different: People v. Woods, 65 Cal. 121, 3 Pac. 466; People v. Armstrong, 114 Cal. 570, 46 Pac. 611. See People v. Prather, 120 Cal. 660, 53 Pac. 259, and People v. Plyler, 121 Cal. 160, 53 Pac. 553.

2. Defendant urges that the evidence was circumstantial, and insufficient to show either that a robbery was committed or that he was guilty thereof. It is true that no one distinctly saw defendant rifle Santonette's pockets, nor was the property of Santonette found in defendant's possession; but the property was taken from him, the evidence tended to show, after he was knocked down, and before he recovered consciousness, and why was Gonzales "holding him on the ground," as Pitts testified? Hardly for the purpose of preventing violence at his hands, for, according to Santonette's testimony, he was then insensible. We are satisfied that this court is not warranted in interfering with the conclusion drawn by the jury from the evidence.

3. The court gave an instruction, correct in point of law, upon the kind and character of corroboration necessary to support the testimony of an accomplice before conviction could be had. It introduced the instruction by the following sentence: "It is contended in this case that the witness Pitts was an accomplice in the commission of a robbery, if it was committed, and therefore his testimony should not be considered by the jury, unless corroborated by other facts and circumstances in the case." It is said of this that the instruction was given by the court of its own motion, that no such instruction was asked by either the people or the defendant, and that no such contention as that Pitts was an accomplice was made by either party in the action. The injurious effect of the language is pointed out, and that effect may be conceded. While it is true that there is nothing in the record to show that such a contention was in fact made, upon the other hand there is nothing in the record to show that such a contention was not made. Error will not be presumed. If, in truth, no such contention was made, it was incumbent upon the appellant to have made that fact appear by a bill of exceptions. Failing to do so, the presumption must be that the instruction was addressed to a theory of the evidence advanced in the argument; and, if such was the case, no error could be predicated upon it. The order and judgment appealed from are affirmed.