[Crim. No. 2269. First Dist., Div. Two. Jan. 28, 1944.]

THE PEOPLE, Respondent, v. ARTERIO BARROW, Appellant.

Walter L. Gordon, Jr., for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

SPENCE, J.—Defendant, a colored woman, was convicted upon a trial by jury of the crime of grand theft and was sentenced to imprisonment in the California Institution for Women at Tehachapi. She appeals from the judgment and from the order denying her motion for a new trial.

On this appeal, defendant makes several contentions, among which is the claim that the evidence was insufficient to support the judgment. It will therefore be necessary to set forth the evidence upon which the prosecution relied to show that defendant had stolen the wallet of the complaining witness.

The complaining witness, a garage man, had attended the Fox Theatre in San Francisco on the evening in question. After leaving the theatre around 10 o'clock he walked up McAllister Street to a point near Gough Street. As he passed Latham's Storage House he heard a noise or groan coming from the entrance way. He went into the entrance way, which was dark, and there found the defendant. He testified, ''She put her arms around me, and her arms came down back of me, around my back. I thought it was sort of funny so I pushed her away. . . . Then I thought it was rather funny that she would do that. . . . I was standing over there, and I started to walk out. I felt for my wallet. Right away I saw my wallet was gone and I grabbed her by the shoulders and I yelled, 'You have got my wallet.' And I pulled her out on the sidewalk . . . she said she never had it, when I pulled her out on the sidewalk. And so I yelled, and there was a colored gentleman on the corner that came running down. And I did not know what it was. He yelled out; he said, 'What is going on here.' . . . I let her go and she went behind him.'' He further testified that he was carrying his wallet in his right hip pocket. The colored man did not speak to defendant and after defendant had left, the colored man told the complaining witness that he did not know the defendant. The complaining witness followed defendant down McAllister Street and then

stopped at a store to telephone the police. He abandoned this idea as he feared he would lose sight of defendant. He again located defendant on Turk Street where he found her in company of the same colored man. He then ran to a police station on Ellis Street and returned to the vicinity with the police in a police car. Defendant and the same colored man were then found at the corner of Ellis and Gough Streets and were taken from there to the police station. A search of these parties did not result in the finding of the wallet. The police therefore searched the entrance way of Latham's Storage House but failed to find the wallet. On the following morning at about 4 a. m., the wallet was found by a 15-year-old boy while delivering papers. As the boy raised a hanging "No Parking" sign, attached to the doors in the entrance way of Latham's Storage House, for the purpose of inserting the morning paper in the mail slot, the wallet dropped to the floor of the entrance way. The wallet contained identifying papers as well as money and the boy returned the wallet and contents to the complaining witness on the same day.

Defendant's testimony concerning the events of the evening was quite different. She testified, "Well, I stopped in a doorway for private reasons, and just as I went to get up this white man walked in on me. And I jumped up because he frightened me, it happened so sudden. So he says 'Don't be afraid, I just want to spend some money with you.' I said, 'You don't want to spend any money with me.' Then he offered me five dollars to be with him. I said, 'No, I don't want any of your five dollars or you either.' And he grabbed me and I wrassled with him. He got me by the arms as though he was going to force me to restrain. And I grappled with him. I got away from him and I screamed, and then he fled, and I went on about my business." She denied taking the wallet and denied that the colored man came up while she was there. She testified, however, that the colored man, who was with her at the time of arrest, had met her about half a block from the place of her arrest, and that she was talking to him about her arthritis at the time of the arrest. She denied that she had previously known the colored man or his name and denied having seen him after the night of her arrest. Other evidence showed, however, that the same colored man had been in court on both days of her preliminary

hearing and that he and defendant had been seen together at the Civic Center on a later occasion.

It was the theory of the prosecution that defendant and the colored man had cooperated in planning the commission of the offense; that defendant had attracted the complaining witness by her groans into the dark entrance way for the purpose of consummating the plan; that defendant had taken the wallet from the hip pocket of the complaining witness when she had her arms around his back; and that she had concealed the wallet under the hanging sign on the door during the confusion which followed the taking. While there was a conflict in the testimony, the jury was entitled to disbelieve the unconvincing story told by defendant and to believe the testimony of the complaining witness. There can be no doubt concerning the sufficiency of the evidence given by the complaining witness to sustain the judgment. Defendant claims that there was no evidence to show that the complaining witness had his wallet on his person at the time he entered the entrance way and further claims that there was no evidence to show that the wallet was taken without the consent of the complaining witness. Assuming without deciding that there was no direct evidence on the subjects to which these claims relate, the only reasonable inference to be drawn from the complaining witness' testimony was that the wallet was on his person at the time and was taken by defendant without his consent.

 It is also contended that "defendant was not represented by counsel at all stages of the proceedings." The record discloses that defendant's attorney of record was Mr. Hennessy. At the opening of the trial, Mr. Coghlan appeared and stated, "Mr. Hennessy asked me to appear for him and select the jury." After the selection of the jury, Mr. Coghlan stated, "I will have to remain in this case until Mr. Hennessy comes. I don't want to delay it." The record does not definitely disclose the time of Mr. Hennessy's arrival but it shows that objections were made by both Mr. Hennessy and Mr. Coghlan on the direct examination of the complaining witness, who was the first witness called to the stand. The cross-examination of the complaining witness, which started at the opening of the afternoon session, was admittedly conducted by Mr. Hennessy who represented defendant throughout all subsequent

proceedings. No claim was made in the trial court that defendant had not been represented by counsel at all times and the record does not sustain the claim now made on this appeal.

Defendant further contends that there was prejudicial misconduct on the part of defendant's counsel, on the part of the district attorney and on the part of the trial court. A reading of the record discloses the possibility that there were some side remarks of counsel on both sides which were not heard by the court reporter and therefore do not appear in the record. Without any apparent provocation, Mr. Hennessy, counsel for defendant, said at one point, "I will slap you in the nose if you call me any names, God damn you." There is nothing to show to whom this remark was addressed, but at another point counsel for defendant stated that the district attorney was "calling me names in the courtroom." While the above statement on the part of defendant's counsel is to be condemned, there is no showing that it was prejudicial and no citation of any authority to show that defendant may complain on appeal of such a remark by her own counsel. We therefore pass the point concerning the alleged prejudicial misconduct of counsel for defendant.

The only claim of prejudicial misconduct on the part of the district attorney is based upon the asking of a question of a police officer concerning a conversation with defendant. The district attorney merely asked the police officer to state a conversation had with defendant on the morning following her arrest. The officer started his answer by saying, "I asked her what her name was and I asked her about the different arrests that she had down in Texas." The trial court promptly sustained an objection and admonished the jury to disregard the statement. The district attorney reframed his question so as to limit the answer to the conversation "about this case in question" and the conversation, as thus limited, was given without objection. It may well be, as contended by defendant, that the district attorney is chargeable with the answer of a witness, containing objectionable matter, even if the question which brought forth such answer was asked in good faith. From a reading of the entire record, including the prompt admonition given to the jury by the trial court, it does not appear probable that the result of the trial would have been differ-

ent in the event that the question had not been asked or the objectionable portion of the answer had not been given. We are therefore of the opinion that any alleged misconduct on the part of the district attorney was not prejudicial.

■ The alleged misconduct on the part of the trial court arose out of statements made to counsel by the trial court. It appears that the complaining witness was hard of hearing. At one point in the cross-examination of the complaining witness, the trial court said to counsel for defendant, ''Now, the way you dropped your voice there, he doesn't know what you asked him, I don't think. Be fair. He is hard of hearing.'' At another point, the district attorney sought to clear up the testimony of the complaining witness and asked the witness if his testimony was as indicated by the district attorney in the question. The witness said, ''That is right.'' Counsel for defendant said, ''That is not his testimony.'' The trial court then said, ''I am sure he doesn't understand because it is contrary to his testimony.'' During certain acrimonious discussions engaged in by counsel, the trial court referred to their actions as ''stage play,'' cautioned counsel to desist and told them they would have to proceed with the trial with proper decorum and could settle their differences outside the courtroom. We find nothing in any of the challenged statements indicating misconduct on the part of the trial court. It was the duty of the trial court to maintain decorum during the trial and it was the duty of the trial court to see that questions propounded to the complaining witness were asked in such manner that the witness might hear and understand them. We do not believe that the trial court overstepped the bounds of propriety in performing these duties. It is interesting to note that on the only occasion when counsel were in apparent disagreement concerning the testimony of the complaining witness, the trial court's statement was in accord with the version of the testimony as stated by counsel for defendant.

■ Finally defendant contends that the trial court committed prejudicial error in admitting certain testimony offered for the purpose of impeaching defendant. We find no merit in this contention. Defendant had testified that she had not subsequently seen the colored man who was with her at the time of her arrest. The testimony upon which the claim of error is based is the testimony of Officer

Iredale to the effect that a colored man by the name of Darnell was seen by him in the courtroom on both days during the preliminary hearing of defendant and was seen by him with defendant at the Civic Center at a later date. Defendant apparently makes two points: first, that it did not appear that Darnell was the colored man who was with defendant at the time of the arrest, and second, that the mere presence of Darnell in the courtroom on two occasions did not prove that defendant had seen him on those occasions. The identity of Darnell as the man who was with defendant at the time of her arrest was established by the testimony of another officer and the question of whether defendant would have seen Darnell upon his appearances in the courtroom was a question affecting the weight rather than the competency of the portion of Officer Iredale's testimony relating to such appearances.

The judgment and order denying defendant's motion for new trial are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.