[Crim No. 1976. Third Dist. Dec. 21, 1946.]

THE PEOPLE, Respondent, v. OSCAR DODSON et al., Appellants.

C. K. Curtright, Geo. I. Lewis and Wallace Shepard for Appellants.

Robert W. Kenny, Attorney General, and James O. Reavis, Deputy Attorney General, for Respondent.

ADAMS, P. J.—Appellants in this action, who have appealed separately and filed separate briefs, were charged by information with the crime of robbery in that they took from the person and immediate presence of one George Criss the sum of $30 by means of force and by putting said Criss in fear. They were tried jointly and both were convicted of robbery of the second degree. Both made motions for a new trial and for probation, which motions were denied.

On this appeal Terry contends that the evidence does not show that Criss was possessed of the money alleged to have been stolen, at the time of the alleged robbery, or that either of the defendants took said property from either the person of Criss or from his immediate presence, and that, therefore, the corpus delicti was not established by the prosecution. Dodson's contentions are practically the same.

In considering these questions on appeal the following principles must be applied, to wit, that all presumptions in support of the judgment are to be indulged, and the evi-

dence, so far as there is any conflict therein, is to be considered in the light most favorable to the prosecution; ▮ also that guilty participation may be shown by circumstantial as well as by direct evidence, and that if the circumstances shown by the evidence justify the conclusion of the jury a reviewing court has no authority to interfere therewith. See *People* v. *Ekstrand*, 28 Cal.App.2d 1, 3-4 [81 P.2d 1045]; *People* v. *Anderson*, 37 Cal.App.2d 615, 619 [100 P.2d 348]; *People* v. *Perkins*, 8 Cal.2d 502, 510 [66 P.2d 631].

▮ Considering the evidence in the light most favorable to the prosecution it shows that on the evening of January 26, 1946, Criss went to the Old Homestead Cafe, a dance hall in Sacramento, about 10:30 o'clock. At that time he had in his possession approximately $35. He drank a bottle of beer while watching the dancing, then struck up an acquaintance with a soldier by the name of Thomas. Together the two of them consumed two bottles of beer, and sat talking until 11:45 p. m. when the closing of the cafe was announced. Criss called a taxi and invited the soldier to go with him to get some chow mein. As they emerged from the cafe they were accosted by defendants, who offered to give them a ride to their destinations, and they accepted. Dodson produced his car which the four entered, Thomas occupying the front seat with Dodson, and Criss the back seat with Terry, the soldier presumably to be taken to the Signal Depot where he was stationed, and Criss to his home. They drove out 12th Street where Dodson turned and drove out along the levee. On the way either Dodson or Terry produced a pint bottle of whiskey and they all had a drink. A short time later they all got out of the car to have another drink, whereupon Terry immediately hit Criss a hard blow on the head, knocking him down over the levee and rendering him unconscious. According to the testimony of Thomas he saw Terry hit Criss a hard blow, Criss rolled down over the levee and was followed by Terry and Dodson. Thomas stated that he saw Terry standing over or near Criss down over the bank, with Dodson within a few feet of them, and that he then hastily departed from the scene. Criss stated that about 45 minutes later he recovered consciousness, and immediately felt for his money, which was in bills and change in his trousers pocket, but found that it was all gone. He then made his way to the police station in North Sacramento and reported it to the police. The police officer in charge there testified that Criss had been beaten up, that his clothes were dirty and

there was blood upon them, and there were cuts and bruises about his face. Both Criss and Thomas testified that there had been no arguments or disagreements at any time before Terry struck Criss.

Terry and Dodson testified in their own behalf stating that they left Criss at the foot of the levee and went to the "Showboat"; that Dodson stayed there for about five minutes and after playing one or two hands of poker left for his home. Terry testified that when he went to the Old Homestead Cafe he had but four cents in money, and a check for $400; that he still had the check which was "no good"; that after Dodson left the Showboat he remained there playing poker until 6 a. m., when he went to town. These two men had known each other for about a year. Neither had been employed recently. Terry had previously been twice convicted of burglary. Both denied taking any money from Criss, and their stories as to the events of the evening differed from those told by Criss and Thomas, but are not important here.

Both appellants argue that the foregoing evidence is insufficient to show that any crime was committed or that either of them committed it; that all it shows is that Criss had approximately $30 when he left the cafe, and that he did not have it when he recovered consciousness down on the levee; that Criss said he made no search for it there, and that there was no testimony that when he arrived at the police station he made any complaint that he had been robbed; that none of the property was found in the possession of defendants; and that the evidence is insufficient to support an inference that defendants or either of them took any money from Criss. They cite authorities which they argue support their theory; but the cited cases are readily distinguishable on the facts and need not be reviewed since we find sufficient authority to support the judgment.

The facts in *People* v. *Barrow*, 62 Cal.App.2d 590 [145 P.2d 42], are comparable. There the complaining witness testified that after attending a theater he walked up the street; that as he was passing a storage house he heard a groan coming from the entrance way which was dark; that he entered it and found defendant, a colored woman; that she put her arms around him, whereupon he pushed her away; that he started to walk out, felt for his wallet and found that it was missing; that he grabbed the woman and pulled her out on the sidewalk, stating that she had his wallet. She denied this and screamed,

whereupon a colored man came up, and the woman walked away. The complainant followed her and a little later found her in company with the same colored man. He then called the police who took them to the police station. The wallet was not found in their possession, nor was it then found in the entrance to the storage house. But the following morning it was found behind a "No Parking" sign, attached to the doors of the storage house. Defendant was convicted of grand theft, and on appeal contended that there was no evidence to show that the complaining witness had his wallet on his person at the time he entered the entrance way, or to show that it was taken from him without his consent. The court affirmed the judgment of conviction, saying at page 594: "Assuming without deciding that there was no direct evidence on the subjects to which these claims relate, the only reasonable inference to be drawn from the complaining witness' testimony was that the wallet was on his person at the time and was taken by defendant without his consent."

In *People* v. *Ferrara*, 31 Cal.App. 1 [159 P. 621] (petition for hearing in Supreme Court denied), the evidence showed that one Duffy met defendant at a saloon in Stockton where they had several drinks, after which the two went to the boat landing for the purpose of going to San Francisco by boat. Because of Duffy's intoxicated condition he was denied passage, whereupon the two went to the Southern Pacific depot. On learning that a Santa Fe train would leave at 8:30, they started to walk to that station, defendant leading the way. They paused on the track to have a smoke, and when Duffy turned his head defendant struck him three times, finally rendering him unconscious, though he testified he had a faint recollection of someone going through his pockets. When he subsequently regained consciousness he found that $28 which he had had in his pocket was gone. It was contended on appeal that the corpus delicti was not proven and that the evidence was insufficient to show that the money taken was the property of Duffy. This court held the evidence sufficient to justify the jury in believing that the money was taken from Duffy's person by force and fear; and the latter's testimony that he had cashed two checks and the money in his pocket at the time he was struck was a part of the proceeds thereof, was held sufficient to show that the money was his property.

In *People* v. *Gonzales*, 6 Cal.Unrep. 263 [56 P. 804], it was urged by defendant that the evidence was insufficient to show

either that a robbery was committed or that he was guilty thereof. The evidence showed that one Santonette, while walking along the street with defendant and three others with whom he had had several drinks, was struck on the head by Gonzales and rendered unconscious. About fifteen minutes later, when he recovered consciousness, his purse containing about $40, and his watch, were missing. One Pitts said he saw Gonzales holding Santonette down, and believed from the way he acted that he went through his pockets, but that he did not see him do so. The stolen property was not found in Gonzales' possession but the court held that the evidence was sufficient to support the conclusion of the jury, saying: ''Defendant urges that the evidence was circumstantial, and insufficient to show either that a robbery was committed or that he was guilty thereof. It is true that no one distinctly saw defendant rifle Santonette's pockets, nor was the property of Santonette found in defendant's possession; but the property was taken from him, the evidence tended to show, after he was knocked down, and before he recovered consciousness, and why was Gonzales 'holding him on the ground,' as Pitts testified? Hardly for the purpose of preventing violence at his hands, for, according to Santonette's testimony, he was then insensible. We are satisfied that this court is not warranted in interfering with the conclusion drawn by the jury from the evidence.'' Also see *People* v. *Rodriquez,* 31 Cal.App.2d 524 [88 P.2d 217] ; *People* v. *Anderson, supra; People* v. *Robinson,* 49 Cal.App.2d 576 [122 P.2d 77] ; *People* v. *Del Prado,* 49 Cal.App.2d 597 [122 P.2d 76].

It is said in 46 American Jurisprudence 162: ''Under the rule that all the elements of the corpus delicti may be proved by presumptive or circumstantial evidence, which prevails in most jurisdictions, it has been held that the commission of a robbery is sufficiently established by proof that the victim had valuables on his person at the time of being assaulted, beaten, and rendered unconscious, and that they were missing when he regained consciousness.''

The trial court in the instant case denied a motion for a directed verdict saying that the evidence was sufficient to go to the jury. It also denied motions for a new trial. In *People* v. *Tedesco,* 1 Cal.2d 211, 219 [34 P.2d 467], the court said that it is the function of the jury, in the first instance, and of the trial court after the verdict, to determine what facts are established by the evidence, and before the verdict of the jury

which has been approved by the trial court can be set aside on appeal upon the ground of the insufficiency of the evidence to support it, it must be made clearly to appear that upon no hypothesis whatever is there substantial evidence to support the conclusion of the trial court. Also see *People* v. *Schneider,* 36 Cal.App.2d 292, 295 [98 P.2d 215] ; *People* v. *Perkins, supra; People* v. *Robinson, supra.*

We cannot say that upon no hypothesis is there substantial evidence to support the verdict and the conclusion of the trial court, therefore the judgment and the order denying a new trial as to each of the defendants is affirmed.

Peek, J., and Thompson, J., concurred.

Petition by appellant Terry for a hearing by the Supreme Court was denied January 20, 1947.