The People of Puerto Rico, Plaintiff and Appellee, *v.* Nicolás Díaz Figueroa, Defendant and Appellant.

No. 15276. Argued December 17, 1952.—Decided February 12, 1953.

350

Santos P. Amadeo, Rafael B. Pérez Marchand, and Ernesto Rodríguez Aponte, for appellant. Juan B. Fernández Badillo, Acting Secretary of Justice, J. Rivera Barreras, Fiscal of the Supreme Court, and Rafael L. Ydrach Yordán, Assistant Fiscal, for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

In the former District Court of Puerto Rico, San Juan Section, a jury found Nicolás Díaz Figueroa guilty of murder in the second degree. The trial judge subsequently rendered judgment sentencing defendant and appellant to serve

a term from ten to fifteen years' imprisonment in the penitentiary. Defendant has appealed to this Court and assigns five errors.

The evidence introduced by the government tended to prove that on November 25, 1949, in the morning, defendant visited the administration office of the market place of Río Piedras carrying a revolver and asking for Nicolás Díaz Jiménez, known as Colito; that defendant stayed there all morning, went out for lunch and returned a few minutes later going into the office and placing himself near the window close to the sidewalk which circles the market place; that about half past one in the afternoon the deceased Nicolás Díaz Jiménez was passing by the sidewalk, close to the window, and without the slightest provocation or discussion, defendant fired at him from the window and that when the latter tried to escape with his back to defendant, appellant fired two additional shots, wounding the deceased in the gluteal region and in the back.

Defendant's theory was one of self defense and the evidence introduced by him, in brief, tended to show that on that afternoon defendant was in the afore-mentioned office and that the deceased entered the office and from the door insulted defendant, fired a shot at him and defendant, who was at the window, took his revolver out and repelled the aggression firing at the deceased and that then the latter fired another shot and a bullet penetrated the wall.

The first two errors assigned, which we shall discuss jointly, are the following:

"First error: The trial court erred in allowing the prosecuting attorney in the opening statement of the case to charge the defendant and other persons with having attempted to interfere with the government's investigation in the preparation of his defense as well as that he would prove those facts notwithstanding the fact that any evidence introduced for said purpose would be inadmissible because it would be immaterial, irrelevant and impertinent and because it had no connection whatsoever with the offense for which appellant was being prosecuted.

■ ■

"Second error: The trial court erred in admitting evidence connected with the alleged interference of defendant and other persons with the government's investigation notwithstanding the fact that said evidence is immaterial, irrelevant and inadmissible inasmuch as it had no connection whatsoever with the offense for which the appellant was being prosecuted."

■ In the opening statement to the jury, that is, in setting forth his theory, the prosecuting attorney stated, in part, the following:

"We shall prove, gentlemen of the jury, that after these events took place and the investigation of the People was opened by District Attorney Padró Parés, Don Augusto P. Álvarez started an investigation by taking sworn statements of the witnesses for the People who had already been investigated by the District Attorney; in order that they would sign in advance these sworn statements, under the theory 'let the dead be buried and the living be merry, that they had to defend Nicolás Díaz Figueroa at all costs'; Don Augusto P. Álvarez under his authority as mayor required the services of an insular police and of Don Guillermo Estrella Frasqueri—this attorney who is present here—to take these sworn statements, under notarial seal, and in that way defeat the ends of justice. If we are able to prove these facts as we expect to do today, we shall request in time a verdict of Murder in the First Degree."

When the district attorney finished his opening statement defendant did not object, or excepted thereto. However, when the witness for the People, Aníbal de Jesús, testified as to an interview of Augusto P. Álvarez, then Mayor of Río Piedras, with several witnesses, in the presence of defendant, and in connection with the opening statement of the prosecution which we have already transcribed, the defense objected to that evidence and requested the lower court to instruct the jury to disregard said evidence or the aforementioned statements of the district attorney. At that instant, that is, while witness Aníbal de Jesús was testifying, the trial judge instructed the jury as follows:

"Gentlemen of the Jury, a defendant is not forbidden by law to interview any person for purpose of preparing his defense on his day. This is, on general principles, and much less when the person interviewed by defendant does not yet appear as a witness in any information against the defendant inasmuch as the law merely forbids the district attorney to interview the witnesses for the defendant once they have been sworn at the trial.

". . . . . . . .

". . . . . . . .

"I said that this was on general principles because these procedural rules have their exceptions inasmuch as the introduction of evidence at the trial concerning acts, conduct, statements or the physical appearance of a defendant after the commission of the crime is admissible, as long as the circumstances warrant the inference that such actions, conduct, statements or physical appearance of defendant indicate what in law is called the 'consciousness of guilt'.

"This is the instruction which according to the defendant I should give and it is thus given."

The evidence introduced by the prosecuting attorney for the purpose of proving that part of his theory which we have already transcribed, and which has been challenged by the defendant, substantially consisted in the following:

Aníbal de Jesús, eyewitness, after testifying on the way and manner in which the shots were fired, testified that some days after the occurrence Lic. Tomás de Jesús Castro went to look for him and took him to the office of Mayor Augusto P. Álvarez and that the latter and defendant were there; that they were preparing defendant's defense and all the witnesses for the defense were present; that Mayor Álvarez was explaining to defendant the way in which he should testify concerning the position in which "he had to be standing close to the window," that the witness was asked whether he had made any statement before the district attorneys and he answered that he had actually done so. The defense cross-examined the witness as to this meeting in

the mayor's office, and upon cross-examination the witness stated that Félix Ochoteco and Rafael Rivera Zayas, counsel for the defendant were there present; that when the attorneys arrived Mayor Álvarez was explaining in what position defendant had to be standing and that Álvarez stated the following: "Because if you are standing thus you might have seen him in advance"; that Lic. Tomás de Jesús Castro asked the witness if he knew something about it and he answered affirmatively and that he had testified before the district attorneys and then Lic. Tomás de Jesús Castro asked him what kind of testimony he had given and the witness answered that his testimony did not incriminate anybody and then the aforesaid attorney stated that it seemed that the district attorneys had not called him; that then Lic. Tomás de Jesús Castro told the witness, "Aníbal, you are the witness who can save us" and then the same attorney asked defendant certain details concerning the occurrence; the witness continued testifying that two days before the trial counsel for the defendant, Lic. Ernesto Rodríguez Aponte, had gone for him at his house but had not found him. He testified that at the interview in Mayor Álvarez's office the latter told the witness: "When you testify keep in mind Colito's position"; that Lic. Tomás de Jesús Castro then told him: "Open your eyes, look where Colito was standing."

In his opening statement, the prosecuting attorney may refer to any fact which, according to the rules of evidence, is inseparable from the offense with which defendant is charged and may refer to facts which necessarily surrounded the offense although they are not a part of the offense itself. *People* v. *Beltrán*, 73 P.R.R. 466, 473; *People* v. *Pierantoni*, 60 P.R.R. 13; *People* v. *Juarbe*, 37 P.R.R. 433; *People* v. *Quiñones*, 69 P.R.R. 682. The doctrine in point is summarized as follows in 23 C.J.S. 527, *et seq:*

"The prosecuting attorney should be allowed reasonable latitude in his opening statement, but except insofar as the contents of his opening statement may be prescribed by statute or rule of court, its scope and extent is largely within the discretion of the trial court. It should be brief and general, rather than detailed, and should be confined to statements based on facts which can be proved and should not include facts which are plainly inadmissible. The opening statement of the prosecuting attorney should not refer to anything that may tend improperly to prejudice accused in the eyes of the jury, and under foregoing rule opening statement containing vituperation, offensive epithets, and argument have no place therein. The prosecuting attorney may generally fully outline the facts which he in good faith expects to prove, and the legitimate inferences therefrom; and, although he states facts which are not followed by proof because the facts themselves are irrelevant, or because he fails to introduce any evidence or introduces incompetent evidence to support them, his statement is not error, if he acts in good faith and with reasonable grounds for supposing that he can prove the facts as stated, especially where they relate to the transaction or act directly resulting in the consummation of the crime.

"A fortiori, he may outline the facts which he in good faith expects to prove, and which it is competent for him to prove. The trial court should require the prosecuting attorney to act in good faith in making his opening statement. In determining whether or not he is acting in good faith the trial court has a wide discretion, and necessarily must rely on his good faith as the statement proceeds." To that effect see *United States v. Lanza,* 85 F. 2d 544, certiorari denied in 299 U. S. 609; *People v. Arnold,* 199 Cal. 471, 250 Pac. 168; *People v. Lima,* 146 P. 2d 261, opinion substituted in 154 P. 2d 698, 25 Cal. 573; *People v. Pierson,* 159 P. 2d 39, 69 Cal. App. 2d 285; *Commonwealth v. Meyer,* 139 Atl. 374.

 Even if the prosecuting attorney in his opening statement refers to facts which are not subsequently proved because the evidence has been inadmissible, if the admissibility presents a debatable question and if the prosecuting attorney has acted in good faith and with legitimate foundations, it is no error if the prosecuting attorney refers to these

facts. *People* v. *Stone*, 250 Pac. 659, 199 Cal. 610; *People* v. *Wolcott*, 30 P. 2d 601, 137 Cal. App. 355; *People* v. *Donaldson*, 171 Pac. 442; *People* v. *Reitz*, 261 Pac. 526; *State* v. *Heinz*, 275 N. W. 10.

In California, in the case of *People* v. *Wong Hing*, 169 Pac. 357, 358, the following is set forth:

" . . . Conceding, however, that no evidence was offered in support of the statement so made to the jury, there is nothing in the record tending to show that it was made in bad faith or without intention of trying to support it by evidence."

In *People* v. *Gleason*, 127 Cal. 323, the following is decided:

"The district attorney is not guilty of misconduct for merely including in his opening statement facts expected to be proved, some of which remained unproved, where there is nothing to indicate an intentional disregard of truth, or clear intent to influence the jury by false statements."

In the case at bar the district attorney not only acted in good faith when he made the statements which have been challenged and which we have transcribed, and not only had he reason to believe that he was going to introduce admissible evidence as to the content of said testimonies but he actually introduced evidence tending to show that, in the presence of defendant, there was an attempt to manufacture or artificially fabricate certain evidence, as it appears from the testimony of witness Aníbal de Jesús as previously transcribed. Aníbal de Jesús' testimony was admissible in evidence, inasmuch as it referred to attempts to prepare or train witnesses artificially, which tended to show a guilty conscience on the part of the defendant. Any evidence which tends to show the manufacture or fabrication of artificial evidence by defendant or with his consent and authority, is admissible, inasmuch as said conduct constitutes an implicit admission to the effect that defendant's case is weak. 2 Wigmore, *Evidence*, 120 *et seq.*, § 278, 3d ed.; 22 C.J.S. 966 *et seq.*, § 633;

45 Yale L. J. 226; 59 Harv. L. Rev. 558; *People* v. *Kristy*, (Cal. 1952) 245 P. 2d 547. The evidence which tends to show the artificial training of a witness or the attempt to weaken or modify the witness' testimony is admissible. *Cleveland* v. *State*, 103 So. 707, 710. The attempt to manufacture false testimonies is admissible in evidence. *Allen* v. *United States*, 164 U. S. 492; *People* v. *Walker*, (Cal. 1950) 221 P. 2d 287; *Hall* v. *Commonwealth*, 224 S. W. 492; *People* v. *Amaya*, 112 P. 2d 942; *People* v. *Miller*, 66 P. 2d 448 and see also the cases of *Wielson* v. *United States*, 162 U. S. 613; *Tucker* v. *United States*, 151 U. S. 164. Any attempt on the part of the defendant to persuade a witness to change the substance of his first affidavit and make a new one, is admissible. *United States* v. *Freundlich*, 95 F. 2d 376. Evidence of a third person's attempts to suppress or fabricate testimony if such conduct occurs in the presence of the defendant is admissible, inasmuch as it may be inferred then that the third person has been authorized by the defendant to do so. *People* v. *Moore*, (Cal.) 160 P. 2d 857. See also the case of *People* v. *Kendall*, 244 P. 2d 418 decided in California in 1952.

In *People* v. *Marín*, 38 P.R.R. 598, it is held by this Court that the fact that in the information there is no allegation of concealment of the corpse and of the crime by the defendant does not bar the prosecuting attorney from referring in his opening statement to facts related to such concealment, or from presenting evidence in regard to such fact. It is held that any act of a defendant which tends to prove an effort or wish on his part to erase the evidence of the crime is admissible, inasmuch as said evidence tends to show the mental condition of the defendant, it being unnecessary that in the information such acts which are subsequent to the commission of the crime be alleged. This Court has also held that the fabrication of evidence for the purpose of proving an alibi may be regarded as an inferential admission of guilt. *People* v. *Delerme*, 51 P.R.R. 503. See also the

case of *People* v. *Lisemba*, 14 Cal. 2d 403, 416, affirmed by the United States Supreme Court in 314 U. S. 219.

In the case at bar the prosecuting attorney acted lawfully in making the afore-mentioned remarks in his opening statement and he introduced admissible evidence in connection with that part of his theory, [1] but even assuming that the prosecuting attorney had not acted correctly we have not been shown that his statements have prejudiced defendant, especially in view of the fact that, as we have seen, the judge instructed the jury on that particular, in a lawful way. *People* v. *Piazza*, 60 P.R.R. 561; *People* v. *Pérez*, 46 P.R.R. 743; *People* v. *Marrero*, 48 P.R.R. 875; *People* v. *Rivas*, 68 P.R.R. 439. Even if the statements made by the prosecuting attorney are improper, where there is no reasonable ground to infer that they affected the jury's conscience, taking sides on the matter, and if those statements from the prosecuting attorney have not prejudiced the substantial rights of the defendant, the fact that the district attorney has expressed himself thus is not a prejudicial error which gives rise to the reversal of the judgment. *People* v. *González*, 59 P.R.R. 95, 102; *People* v. *Colón*, 65 P.R.R. 714; *People* v. *Zayas*, 65 P.R.R. 504; *People* v. *Rivera*, 64 P.R.R. 623; *People* v. *Carreras*, 62 P.R.R. 148. In *People* v. *Ojeda*, 66 P.R.R. 399, it is held that improper isolated statements uttered by the district attorney upon cross-examining a witness do not give rise to a reversal where the evidence for the prosecution is so strong and convincing, that even in the absence of such statements, the verdict would have been the same.

The two errors assigned were not committed.

■ Under the third assignment defendant-appellant alleges that the trial court erred in not sustaining the mis-

---

[1] Félix Ochoteco and Rafael Rivera Zayas, attorneys at law, testified as witnesses stating that Aníbal de Jesús's testimony was not true. However, the problem raised is not one of credibility but of admissibility of the latter's testimony.

trial moved for by the defense for all the incidents which occurred during the prosecution against defendant-appellant, especially in connection with the incident between the district attorney and the witness Augusto P. Álvarez. When witness Álvarez testified, the following incidents, in part, took place:

"District Attorney: Q.—You have said, witness, that Mrs. Ángeles Méndez who was Treasurer at that time is today the Mayoress? A.—She was the Treasurer and she is the acting Mayoress, at present. Q.—Then you are no longer the Mayor? A.—Unless the Supreme Court so decides, it is in litigation. Q.—Are you the plaintiff or the defendant in the suit? Defense: We object Your Honor. Hon. Judge: Objection sustained . . . . Q.—And Próspero Guerrero? A.—Próspero Guerrero was acting as a sort of secretary. Q.—What do you mean by a 'sort of secretary'? A.—Because he was not a secretary, he was a mere clerk. He takes no dictation. He is a poor devil. Q.—If he is a poor devil how come he is employed in the University of Puerto Rico? Don't you know it? A.—I do not know what position he occupies. Defense: We object, Your Honor to the line of inquiry of the district attorney. District Attorney: But look at the way that this witness has answered. This witness is not a peddler; he is a municipal mayor. We have not asked him that question and he has said 'he is a poor devil' as though trying to impair the integrity of Mr. Próspero Guerrero, who is a witness for the People. What authority does the witness have to state that Próspero Guerrero is a poor devil? I can show that he is not a poor devil. Defense: We request that the statements of the district attorney trying to argue and prejudice the rights of this defendant be stricken from the record. It is an improper argument. He can not argue in such a way. He has no right to argue with the witnesses. Hon. Judge: The argument is stricken but the question is sustained. District Attorney: (Addressing the witness.) Q.—Answer me, witness, do you know if Próspero Guerrero—that poor devil—occupies an important position in the University of Puerto Rico? A.—Important? Q.—Yes, sir. A.—No. Q.—You do not know it? A.—No, sir. Q.—Do you know if Próspero Guerrero—that poor devil—holds the highest rank that can be obtained in the Boy Scouts organization in Puerto Rico? Defense: This is improper. What does this line of inquiry to which the witness is being submitted have to do with the case herein? The district attorney is

entitled to ask for the elimination of said adjective if he believes it improper, but he is not entitled to come in here and bring the Dean of the College of Pharmacy to show that this man is not a poor devil. That can not be done. Is it not true that John Doe occupies a high position in the University of Puerto Rico? This is improper and we object to the question. District Attorney: With that same witness we can establish that. With that same witness who has referred to a prosecuting witness as a poor devil. I take the opportunity, inasmuch as he has referred to him as a poor devil before the jury. Defense: Now the colleague is more mistaken than at the beginning. District Attorney: I am going to ask the colleague to stop that thing. Defense: What thing? District Attorney: Address the court establishing legal grounds without referring to the fact of whether or not I am mistaken; without raising questions of whether or not this should be stricken, and I am merely fulfilling my duty. It can be proved, using this same witness, that he is an interested party and biased against this witness for the People. What is more, we stated that we were going to prove to the court that this witness is an interested party in this suit. Defense: We request that Your Honor declare a mistrial for all that appears in the record and which is being said. There is no evidence. Bring evidence of this nature before the jury. Hon. Judge: The motion for mistrial is overruled. I instruct again the gentlemen of the jury to utterly disregard the statements made by the defense or by the district attorney. All this argumentation is unnecessary at a trial by Jury. (Addressing the gentlemen of the jury.) As to this, you are to disregard it completely. The only issue in question before the court is whether or not we sustain the district attorney's question. The court sustains his questions. (Addressing again the gentlemen of the jury.) The Court orders you to utterly disregard these arguments. Defense: We take an exception. When I was going to argue the district attorney interrupted me . . . . . District Attorney: (Addressing the witness.) Q.—How long, witness, did Aníbal de Jesús occupied the office of administrator of the market place? A.—I can not say exactly but for about a year. Q.—Can you remember whether he held said office since August 1948? A.—I can not remember. Q.—At the time of the occurrence, you say that he had held it for about a year? A.—I think so but for fear that I be inaccurate I do not dare precise for how many months he

had been administrator. Q.—Now, would you dare to state, without fear, how long after the occurrence did he stop being administrator of the market place? A.—Two or three months; I can not be exact. Q.—You can not say exactly for fear that you are wrong. Try to remember witness whether it was two or three days after the occurrence that Aníbal de Jesús stopped being an employee in the office of the administration of the market place to become an employee of the Municipal Treasury? A.—He was always an employee of the Municipal Treasury. Q.—But what you mean to say is that instead of being in the office of administration of a market place he was transferred to the Municipal Treasury? A.—Yes, sir. Q.—And without fear also try to see if several days later he stopped being a municipal employee? A.—Not several days later, several months. Q.—No fear there? A.—No fear. Q.—And without any fear also . . . A.—Ha . . . Ha . . . Ha . . . (witness laughs out loudly.) Defense: This is wrong. We must call the attention of the colleague—inasmuch as we are sure that the court does not participate in the opinion of the colleague—that he can not address a witness in such a way as to violate his right as such. My colleague, the district attorney, is using a refrain—when the witness stated that for fear to be mistaken he could not refer to an exact date—and every time that he asks the witness a question he says 'for fear,' 'without fear,' etc. Your Honor has to admit that this conduct before the jury is improper inasmuch as it concerns the treatment that must be given to a witness by the counsel as well as by the prosecuting attorney. We invite Your Honor to read the examination of the district attorney and you will see the constant repetition of 'for fear,' 'for fear,' 'without fear,' 'without fear,' etc. We believe that we are bound to ask Your Honor to indicate to the prosecuting attorney that such a method of examination reflects on the witness. Mr. Ledesma laughed, for the record. It provokes laughter. Hon. Judge: The District Attorney is ordered to ask the question striking the part objected to. Defense: The witness is entitled to be respected pursuant to the law. District Attorney: Now we object to the remark made by my distinguished colleague and professor of law. A comment as to whether or not a witness is entitled to be respected is unnecessary. Hon. Judge: Proceed . . . Q.—Witness, in May 1950, Your Honor was Mayor of Río Piedras? A.—I think so. Q.—Let us see if we can make the statement a little bit more

exact. You ought to know when you were suspended from employment and pay as a Mayor. Defense: We object to the District Attorney's statements that the witness was suspended from employment and pay. District Attorney: The question is withdrawn. Hon. Judge: The question is withdrawn, there is nothing in issue. District Attorney:—(Addressing the witness.) The truth is that you stopped being the Mayor of Río Piedras and I ask whether in May 1950 you were no longer the Mayor. A.—I do not know whether it was in May or in April. Q.—Are you interested in this proceeding? A.—I only want justice to be done. Q.—Then your interest is the interest of any private citizen? A.—Any private citizen. Q.—Without having interfered in this proceeding? A.—Exactly. Defense: Your Honor a very serious charge is being made to the witness. We object. Hon. Judge: He already answered that he did not interfere. Defense: We request Your Honor not to permit the District Attorney to ask questions which may aggrieve the witness. Hon. Judge: There is nothing in issue; he already answered that he had not interfered. That is a finished question. Defense: We take an exception. District Attorney: (Addressing the witness.) Q.—Should we understand that you have absolutely not interfered in this proceeding? Defense: We object. Hon. Judge: He already stated that he had not interfered. District Attorney: I want to emphasize in order to ask specific questions. Defense: I would like to be in a better position to guide the distinguished district attorney as to the fact that this proceeding . . . Hon. Judge: The objection must not be like that. Defense: This is no objection. It is a petition in order to clear up a matter. When the colleague states 'that this proceeding' I want to know which is the proceeding. District Attorney: This proceeding which is being heard. I do not know how to say it correctly. If 'prosecution' is the right word, well then I say prosecution. Defense: What the colleague seems to intimate is that I am trying to teach him in order to inflame the minds of the jury against me, but not that he regards me as superior in knowledge. District Attorney: Then there is nothing wrong? Defense: There is nothing wrong. Hon. Judge: Then proceed. District Attorney: (Addressing the witness.) Q.—Witness, is it clear that you have never interfered in support of or in connection with this prosecution of the People of Puerto Rico against Nicolás Díaz Figueroa? Defense: Now I shall make a legal objection. Right now the witness is inter-

fering in this prosecution as a witness for the defense. If what the District Attorney means to ask the witness is whether he has illegitimately interfered in this proceeding, then the best thing would be—and I would not object—to ask him specific or even leading questions, for otherwise the question is too vague. District Attorney: That is not a legal objection. That, let me tell you, my colleague, is an interruption. If the question is vague, the witness has not said that he does not understand. If he says so, I will make the question clearer. Defense: I am interested that later in the argument no reference be made to an interference which was not cleared up. There was an administrative interference when he suspended this defendant from employment and pay. That is what I mean. Hon. Judge: That would not be like that. District Attorney, proceed. District Attorney: (Addressing the witness.) Q.—Witness, have you interfered with the witnesses who would be·called in this case? A.—No. I only ordered an investigation of the occurrence. Q.—The question is whether you have personally interfered with the witnesses who would testify in this prosecution? A.—I called all the witnesses to have them inform me of the occurrence at the market place. Q.—Should I understand that defendant was among those witnesses? A.—No, because he was in prison. Q.—But later? A.—I think so. Q.—Let us see if you can assure it. A.—I am almost sure that he was. Q.—Did you speak with defendant once? A.—Many times. Q.—Are you sure? A.—As to that, I am sure. Q.—Tell me, is it or is it not true that once after you spoke with defendant about the facts of the case and he told you how they happened, you told him: 'No, it can not be like that; you have to testify like this'? A.—Whoever says it, that is false. Q.—Is that false? A.—I have respect for myself and I also know how to respect others and inasmuch as I respect myself I am not capable of interfering in such a manner. Q.—And your interference to investigate these facts was at the time they happened? A.—Yes, sir. . . . . . . . . . . .

Q.—Is there anything else in connection with Próspero Guerrero that you may tell me or have you forgotten everything? A.—I do not suffer from amnesia. Those questions . . . Defense: We object to the question. District Attorney: Let us request the Court to instruct the witness to answer my questions and not to make any comments against this Prosecuting Attorney because we are not going to permit it either

as District Attorney or as anything. Defense: My colleague the District Attorney has heard an offense according to him and the record is the best evidence that there can be in this court and the statements of the district attorney continue altering the proceeding in this case. Hon. Judge: What is the question? Defense: Your Honor has witnessed this incident and has heard the statements of the District Attorney and the statements of the witness and we understand that this atmosphere is completely prejudicing the rights of the defendant and we move now for a mistrial. The District Attorney challenging the witness. District Attorney: My colleague Rodríguez Aponte told me that what the witness stated was 'amnesia' and then I heard wrong. If I heard wrong the only thing to do is to make things clear and nothing has happened. Defense: It can not be so. Hon. Judge: The court believes that this is but a tempest in a teapot. Just as a witness is entitled to be protected and the court protects him; the District Attorney is also entitled to interpret an answer in a particular sense and protest. The witness clears up the question and there the interruption ends. If the witness himself would have made it clear nothing would have happened. I believe that it is the counsel and the District Attorney who are causing these tempests in a teapot and the court wants to state that ever since this prosecution began, there has been a lot of quibbles and quirks, so much so, that the court has had to be admonishing the defense as well as the district attorney regarding their conduct. If they would change their attitude these disagreeable incidents which do not affect defendant's rights at all, would not happen. Defense: We have moved for a mistrial for the offensive conduct of the District Attorney in challenging the witness in open Court. This is no longer a matter of quibbles and quirks. In a trial by jury this is prejudicial. Hon. Judge: The court has to know the answer. Read the answer and nothing will be decided until the witness' answer is known. Stenographer: Q.—Is there anything else in connection with Próspero Guerrero that you may tell me or did you forget everything? A.—I do not suffer from amnesia. Those questions . . . Hon. Judge: After hearing the record, the motion for mistrial is overruled. Defense: We take an exception. District Attorney: That is all with the witness."

A motion for mistrial does not lie unless it is proved that defendant has suffered positive damages or that his substantial rights have been prejudiced or unless it is evident that there has not been a fair and impartial trial. *Avery* v. *State,* 70 S. E. 2d 71; *State* v. *Frazer,* 248 S. W. 2d 645; *Johnson* v. *State,* 72 S. E. 2d 291.

■ In the case at bar the District Attorney was aggressive in his examination of witness Álvarez but we do not believe that the way in which he expressed himself implies that there was not a fair and impartial trial or that the defendant's substantial rights were prejudiced, especially since the trial judge interfered several times and immediately gave adequate instructions to the jury. Incidentally, in *People* v. *Rivera, supra,* it is held that the refusal to direct a mistrial on the ground that the District Attorney, upon laying a foundation for the impeachment of a witness, stated that he was going to put the latter in jail for perjury, will not be disturbed on appeal, where it appeared that the court immediately thereafter charged the jury at length and concluded by saying that the jurors should disregard the statements involved, decide the case upon the merits, according to the evidence introduced and judge each witness by his own testimony and by the manner in which he testified and not by what the District Attorney said. See also *People* v. *Carreras, supra.* In *People* v. *Pérez, supra,* it is held that where the statements of a prosecuting attorney in the presence of a jury have caused no prejudice to the defendant before said body, they constitute no ground for reversal.

■■ A prosecuting attorney should not abuse or make baseless insinuations against the witnesses, (23 C.J.S. 521), but should his conduct be improper, with respect to the witness, this should not be a ground for reversal unless it be shown that his conduct inflamed the minds of the jury and that the trial had not been fair and impartial. 23 C.J.S. 1154; 24 C.J.S. 896, *et seq.; People* v. *Gidney,* 10 Cal. 2d 138; *People* v. *Matthew,* 228 P. 424, 194 Cal. 273. It falls

within the discretion of the trial court to grant or refuse a motion for mistrial because of the improper conduct of the prosecuting attorney, and said discretion will not be disturbed on appeal unless it has been clearly abused. 24 C.J.S. 772; *State* v. *Hamilton*, 102 S.W. 2d 642. In the case at bar the judge who presided the hearing in the lower court did not abuse his discretion in overruling the motion for mistrial.

 The fourth error assigned by the defendant-appellant is alleged as follows:

"The trial Court erred in acting arbitrarily towards the accused's counsel insinuating that they were as guilty as the district attorney of the incidents occurring during the course of the trial, prejudicing therefore the right of appellant to an impartial trial."

After the incidents which we have transcribed as to the testimony of Augusto P. Álvarez the following happened, just as we previously stated:

"Q.—Is there anything else in connection with Próspero Guerrero that you may tell me or did you forget everything? A.—I do not suffer from amnesia. Those questions . . . Defense: We object to the question. District Attorney: Let us request the Court to instruct the witness to answer my questions and not to make any comments against this Prosecuting Attorney because we are not going to permit it either as District Attorney or as anything. Defense: My colleague the District Attorney has heard an offense according to him and the record is the best evidence that there can be in this court and the statements of the district attorney continue altering the proceeding in this case. Hon. Judge: What is the question? Defense: Your Honor has witnessed this incident and has heard the statements of the District Attorney and the statements of the witness and we understand that this atmosphere is completely prejudicing the rights of the defendant and we move now for a mistrial. The District Attorney challenging the witness. District Attorney: My colleague Rodríguez Aponte told me that what the witness stated was 'amnesia' and then I heard wrong. If I heard wrong the only thing to do is to make

things clear and nothing has happened. Defense: It can not be so. Hon. Judge: The Court believes that this is but a tempest in a teapot. Just as a witness is entitled to be protected and the court protects him; is the District Attorney entitled to interpret an answer in a particular sense and protest. The witness clears up the question and there the interruption ends. If the witness himself would have made it clear nothing would have happened. I believe that it is the counsel and the District Attorney who are causing these tempests in a teapot and the court wants to state that ever since this prosecution began, there has been a lot of quibbles and quirks, so much so, that the court has had to be admonishing the defense as well as the district attorneys regarding their conduct. If they would change their attitude, these disagreeable incidents which do not affect defendant's rights at all, would not happen. Defense: We have moved for a mistrial for the offensive conduct of the District Attorney in challenging the witness in open Court. This is no longer a matter of quibbles and quirks. In a trial by jury this is prejudicial. Hon. Judge: The Court has to know the answer. Read the answer and nothing will be decided until the witness' answer is known. Stenographer: Q. Is there anything else in connection with Próspero Guerrero that you may tell me or did you forget everything? A. I do not suffer from amnesia. Those questions ... Hon. Judge: After hearing the record, the motion for mistrial is overruled. Defense: We take an exception. District Attorney: That is all with the witness."

Naturally, in a criminal case, a trial judge must act in such a manner as to impress the jury that he is entirely impartial and does not favor any of the parties. *People* v. *Acevedo*, 35 P.R.R. 886. A trial judge should avoid making any remarks in the presence of the jury to indicate what his opinion may be, (*Seward* v. *State*, (1952) 59 So. 2d 529), and the determination as to whether or not a remark made by the judge in the course of the trial is prejudicial to the defendant, turns on the scope of the remark, on the influence it might have on the jury, and its effects in regard to the defendant's opportunity to defend himself and the judgment should be reversed when the remarks made by the judge are

of such a nature as to tend reasonably to influence the minds of the jury against said defendant, depriving him of the right to a fair and impartial trial. *People* v. *Bartolomei*, 70 P.R.R. 664. On the other hand the judge has the power and duty of adopting those measures which guarantee the establishment of a judicial atmosphere of dignity, efficiency and serenity. In *United States* v. *Dennis*, 183 F. 2d 201, 225, it was assigned as an error the trial judge's rebukes and warnings and statements to defendant's attorneys. In his opinion, Justice Learned Hand held that said warnings did not weigh scales against defendants or deny adequate opportunity for presentation of defendant's case. It was stated that the judge was only attempting to keep the trial within measurable bounds, and in the course of the opinion the following is set forth:

"Justice can be as readily destroyed by the flaccidity of the judge as by his tyranny; impartial trials need a firm hand as much as a constant determination to give each one his due. . . . a judge . . . does not conduct himself with the imperturbability of a 'Rhadamanthus' . . ."

A court may properly caution or admonish counsel during the case provided it is done in such manner as not to subject counsel to ridicule or discrimination or to prejudice the minds of the jurors against defendant. 23 C.J.S. 340; *Moore* v. *United States*, 132 F. 2d 47, certiorari denied in 318 U. S. 784; *People* v. *Barrow*, (Cal.) 145 P. 2d 42; *People* v. *McCoy*, 153 P. 2d 315, 25 Cal. 2d 177; *People* v. *Moore, supra; United States* v. *Minkoff*, 137 F. 2d 402. What is essential is to preserve and protect the dignity and the efficiency of the court without prejudicing the defendant. *Lambert* v. *United States*, 101 F. 2d 960; *United States* v. *Siden*, 293 Fed. 422; *People* v. *Whittaker*, (Cal.) 63 P. 2d 1202; *United States* v. *Brandt*, 196 F. 2d 653.

In *People* v. *Munera*, 39 P.R.R. 267, it is held that when the attorney for the defense exceeds his rights in repeating questions to the witnesses the interference of the judge to

prevent unnecessary repetitions is not error. In this case the trial judge made a remark to the effect that a witness was being subjected to a great moral torture and it was held that this was not an error which justified the reversal of the judgment. In *People* v. *Marrero, supra,* the judge warned a witness that he would be punished for contempt, if he did not testify in a voice loud enough to be heard. It was held that said action was justified in view of all the incidents at the trial and that it did not prejudice the defendant. See also *People* v. *Mercado,* 46 P.R.R. 147; *People* v. *Aponte,* 26 P.R.R. 537. In *People* v. *Salas,* 60 P.R.R. 675, it was held that the fact that the judge warns the witness that it is his duty to tell the truth does not show any prejudice against the accused. See also *People* v. *Millán,* 46 P.R.R. 859; *People* v. *Quiñones,* 46 P.R.R. 221; *People* v. *León,* 53 P.R.R. 408.

In *People* v. *Barrow, supra,* a California case, the counsel engaged in certain acrimonious discussions. The trial court referred to their actions as "stageplay" and cautioned counsel to desist and told them they would have to proceed with the trial with the proper decorum. It was held that such statements did not indicate misconduct on the part of the trial court inasmuch as it was its duty to maintain decorum during the trial.

In *State* v. *Robinson,* (1952) 58 So. 2d 408, the trial judge remarked that he would not permit counsel to ask the witness insulting questions and it was held that said comment was not an error which would warrant the reversal of the judgment. In *State* v. *Birchfield,* (1952) 70 S.E. 2d 5, it was held that the trial judge's attempt to require one of the accused to observe the rules of evidence did not deprive the accused of their fundamental right to a trial before an impartial judge and an unprejudiced jury, in an atmosphere of judicial calm.

In the case at bar the judge acted very properly and correctly in cautioning counsel to desist from engaging in

unnecessary controversies and arguments. He did not limit himself to caution counsel for the defendant but he addressed both the defendant's counsel as well as the prosecuting attorney, which implies an absence of prejudice and discrimination. *Maxwell* v. *State*, 64 S. W. 2d 79; *State* v. *Cohen*, 255 Pac. 910. The judge did not ridicule the counsel for the defendant nor abused them and his statements did not tend to prejudice the minds of the jury. *People* v. *Emmett*, 12 P. 2d 92.

The fourth error assigned was not committed.

 In its fifth and last assignment defendant-appellant alleges that he did not have a fair and impartial trial because one of the jurors, Mr. Joaquín Ledesma, showed to be prejudiced against defendant "as it appears from his statements before the court while examining one of the witnesses for the defense."

The witness for the defense, Juan Clemente, began to testify that from a window he observed that defendant was inside the office in the market place of Río Piedras, that "Colito" arrived, insulted defendant and fired a shot at him and that immediately thereafter defendant fired another shot; that about six or seven shots were fired there and that there was a distance of about five to six feet between defendant and "Colito" when the first shots were fired. Previously it had been testified that a bullet had penetrated the wall at about nine feet from the floor. Then the juror, Mr. Joaquín Ledesma, made the following questions:

"Juror Mr. Ledesma: Q.—Did you know what was defendant's purpose in being there? A.—Well, I heard that an investigation was going about and that he went to collect some money. Q.—Who did you hear say it? A.—Próspero himself and Aníbal who had said it; and he went—as I was told—to collect the money. Q.—How far was Colito from defendant at the moment he uttered those words; when he cursed his mother as you say? A.—He was at a distance of five or six feet. Q.—And 5 or 6 feet apart he shot at him at a moment's notice above Próspero's head in the way that you and the District Attorney have shown?

Did he shoot above Próspero's head? A.—It had to be above Próspero's head. Q.—And at a distance of five feet, from the place he was standing and being he the first one to shoot, he did not wound Próspero? A.—No sir, he did not wound him. Q.—That is all. Defense: Do you know if he was a marksman; if he had been in the army? A.—I do not know if he was a marksman. Q.—And would you be surprised if a person missed the target? A.—No, sir. Q.—Do you say that he was bent? A.—Yes, sir. Q.—Would that then be the bullet which went upward? A.—Yes sir, it could be. Q.—That is all. Juror Mr. Ledesma: Q.—According to what you have said the bullet which penetrated the wall is nine feet from the floor? A.—Yes, sir. Q.—That is to say, that if he is at the door and shoots from a right angle and there is only a distance of five feet, the trajectory of the bullet can not ascend up to nine feet high unless it be a fake shot . . . Defense: We request that the juror be instructed not to argue. Hon. Judge: Do not argue. The court instructs the juror Mr. Ledesma that as a question that is too much of a question. Juror Mr. Ledesma: I wanted to bring that in, so that with my knowledge on ballistics I could make my own conclusions. Hon. Judge: Have that question stricken. Defense: Let it remain in the record. Hon. Judge: Let it remain in the record, but the gentlemen of the jury are instructed to utterly disregard that part of Mr. Ledesma's examination."

Really the comment by juror Ledesma as to the fact that the trajectory of the bullet could not ascend up to nine feet high unless it was the case of a "fake shot," would be tantamount to showing an immediate impression of the trajectory of the bullet and as to the distance between defendant and decedent. The remarks of juror Ledesma referred to an important point in the theory of the defense. However, although juror Ledesma departed from his usual function as a juror, and even though his comment exceeded the limits of the usual line of inquiry, it does not mean that said juror was prejudiced against the defendant, to the point of justifying a reversal of the judgment rendered, especially in view of the fact that the trial judge in the lower court immediately told the juror Ledesma to abstain from arguing and in-

structed all the other members of the jury to disregard the remarks already transcribed of juror Ledesma. Jurors are not lawyers nor do they know the limits imposed by the law as to the development of an interrogatory. What juror Ledesma did was to spontaneously express his reaction as to an aspect of the evidence, for the purpose of clearing up that part of the case. That does not mean that he was prejudiced against defendant up to the point of implying that the trial was not fair or impartial.[2] Generally speaking a verdict should not be set aside on the basis of misconduct of a juror unless it be of such a character as to evidence bad intention on the part of the juror or as to affect the impartiality of the jurors and prevent them from exercising reason and judgment. 53 Am. Jur. 643. The essential text refers to the question of whether the substantial rights of the defendant have been injured and whether a reversal on that ground is exacted for the purposes of securing total justice for defendant and a due administration of law. It is natural that jurors have impressions as the case proceeds but they may be and often are changed on a full hearing of the evidence and instructions by the court. *McGuire* v. *Amyx*, 297 S. W. 968.

It must be presumed that the jury bases its verdict in the evidence introduced. *People* v. *Emmanuelli*, 67 P.R.R. 626; *State* v. *Robinson, supra; People* v. *Báez*, 45 P.R.R. 498. Said presumption has not been overcome in the case at bar. As to the questioning of witnesses by a juror see the Annotation in 159 A.L.R. 347.

None of the errors assigned by the defendant-appellant was committed and, therefore, the judgment will be affirmed.

---

[2] Throughout the prosecution juror Ledesma asked other questions but they were lawful and within the normal course of the examination.