[Crim. No. 2900.   Second Appellate District, Division Two.—January 7, 1937.]

THE PEOPLE, Respondent, v. SAMUEL T. WHITTAKER, Appellant.

R. E. Parsons and Samuel L. Rummel for Appellant.

U. S. Webb, Attorney-General, James S. Howie, Deputy Attorney-General, Buron Fitts, District Attorney, and U. U. Blalock, Deputy District Attorney, for Respondent.

WOOD, J.—Appellant Whittaker and James Culver were jointly accused of the crime of murdering Ethel Whittaker, wife of appellant. In a separate indictment Whittaker was accused of the crime of assault with a deadly weapon with intent to murder James Culver. The two indictments were consolidated for trial and Culver entered a plea of guilty to the charge of murder. Upon trial a jury found Whittaker guilty of both charges and he appeals from the judgments pronounced.

Whittaker and his wife were living in an apartment on Alvarado Street in Los Angeles. On the evening of March 16, 1936, Mr. and Mrs. Whittaker left their apartment and returned early in the following morning. Soon after they reached their apartment several shots were heard and Whit-

taker called the hotel clerk by telephone. The shooting attracted the attention of other residents of the apartment house. One of these, Henry Failer, coming from his own apartment, met a man leaving the Whittaker apartment whom he later identified as James Culver, a young man of twenty-three years of age, weighing about 140 pounds, about five feet ten inches in height, and with light complexion. Culver passed Failer in the hallway and ascended the stairs leading toward the roof of the apartment house. Failer then entered the Whittaker apartment and saw Mrs. Whittaker upon the floor and Mr. Whittaker standing facing a chiffonier in the apartment, a revolver in his right hand. Upon the arrival of the officers Whittaker told them that when he and his wife returned to their apartment a man had stepped out of a closet with gun in hand and commanded them to give him their money; that the intruder had shot Mrs. Whittaker and that he had fired five shots at the intruder, wounding him but not killing him. Whittaker described the intruder as being a heavy set man weighing some 200 pounds, with dark complexion and dressed in a gray suit. The intruder was in fact James Culver and he was dressed in a blue suit. The officers went to the rooming house next door, where they found and arrested James Culver, who was suffering from wounds in his right arm and chest. Culver implicated Whittaker in the murder of his wife and in telling the officers of the circumstances of the affair stated to them that he had upon instructions from Whittaker hidden the gun in an old mattress on the roof of the rooming house. The officers recovered the gun from the mattress. Whittaker remained in his apartment until after the officers had apprehended Culver and stated that Culver was not the man who had been in his apartment at the time of the shooting. Whittaker was taken to a sanitarium but was brought back to his apartment, where he then told the officers that he knew of a good place where the gun might have been hidden and indicated the old mattress on the roof of the rooming house. Whittaker led the officers to the mattress and in the dark reached into the slit cut into the side of the mattress where the gun had actually been hidden by Culver.

Whittaker was drawing compensation for total disability under an insurance policy. The life of Ethel Whittaker

was insured for $9,000, the policies containing provisions for double indemnity in the event of violent or accidental death. Mrs. Whittaker had expressed the intention of allowing one of the policies, in the sum of $5,000, to lapse on May 1, 1936.

James Culver, testifying for the prosecution, stated that early in the year 1936 he had hitch-hiked from Kentucky; that he had met Whittaker in front of a cafe early one morning and had asked him for the price of something to eat; that Whittaker told him he lived at the Hayward Hotel; that they saw each other frequently thereafter and that Whittaker had given him money in small amounts; that Whittaker had supplied the money with which he had purchased the gun used in the affray; that Whittaker had told him he wanted to stage a fake holdup to give a thrill to a lady friend; that Whittaker had planned the entire affair and had given instructions to Culver that he was to wait in the closet for Whittaker and his lady friend and that after they were in the room he was to come out and pretend he was holding them up; that when Mr. and Mrs. Whittaker arrived at the apartment on the night of the murder he pointed the gun at Mrs. Whittaker, taking her money; that thereupon Mr. Whittaker started shooting; that when the first bullet entered his arm he accidently shot Mrs. Whittaker; that he did not know how many times he had fired; that Mrs. Whittaker fell and he turned and ran and that Mr. Whittaker kept firing at him.

Appellant contends that the testimony of James Culver, an admitted accomplice, is not sufficiently corroborated. The test for the sufficiency of corroborating evidence as prescribed by section 1111 of the Penal Code is that such evidence "shall tend to connect the defendant with the commission of the offense". It is not necessary that the corroborating evidence extend to every fact and detail covered by the statements of the accomplice or to all the elements of the offense. Although the evidence must be more than sufficient to cast a mere suspicion, it is sufficient if the connection of the accused with the crime may be inferred from the corroborating evidence. (*People* v. *Yeager,* 194 Cal. 452 [229 Pac. 40].) It has been held that the defendant's own statements and omissions, in connection with other testimony, may afford corroboratory proof sufficient to sustain a verdict.

(*People* v. *Negra*, 208 Cal. 64 [280 Pac. 354].) ▪ An abundance of evidence was presented to corroborate the testimony of the accomplice. Many circumstances shown in evidence might be referred to as establishing the corroboration and it is unnecessary to lengthen this opinion by stating here all of the circumstances presented by the prosecution. In addition to matters already mentioned it is sufficient to refer to the conflicting statements given by Whittaker as to how the shooting occurred, to the testimony by one Thayler that Whittaker had attempted to induce him to engage in an effort to "scare" his wife by means similar to those proposed to Culver; and the testimony concerning the finding of bullet wounds in the body of Mrs. Whittaker, some of which, according to a ballistic expert, were fired from the gun held by Whittaker.

▪ Appellant claims that error was committed by the trial court in refusing to allow him to present testimony concerning the character of the rooming house in which the accomplice Culver was living prior to the commission of the crime. The manner in which a witness may be impeached is provided by section 2051 of the Code of Civil Procedure. The proffered testimony does not come within the provisions of the section which expressly provides that "evidence of particular wrongful acts" on the part of the witness may not be shown except that it may be shown that he had been convicted of a felony.

▪ A witness on behalf of the prosecution, one Pallas, testified that he had had a conversation with the accomplice Culver regarding the purchase of a gun. The objection to this testimony was made by appellant on the ground that the testimony was hearsay. The court did not err in admitting the testimony, which was admissible under the well-known exception to the hearsay rule, permitting proof of the acts or statements of one of the conspirators in furtherance of the conspiracy after evidence had been introduced establishing the existence of the conspiracy.

▪ Appellant complains of the action of the district attorney and the trial court which he asserts amounted to prejudicial misconduct. At one point in the trial counsel for appellant charged in open court that the deputy district attorney was signalling to the witness Culver in order to indicate to the witness how questions should be answered.

The record shows that Mr. Rummel, counsel for the defense stated: "I don't understand—every time this witness is asked a question he looks at Mr. Hammon and when Mr. Hammon raises his hand, as he has on 14 different occasions, he says no, and every time Mr. Hammon's hand goes down, he says yes. I just don't understand the situation. If there is a set of signals—I have been noticing them here all yesterday afternoon and this morning, and if there is any set of signals between the witness and any other person present in the courtroom, I don't think it is fair." The court asked the district attorney if he had anything to say. Mr. Hammon, the deputy district attorney, said: "You realize it is a scoundrelly remark." Thereupon Mr. Parsons, one of the attorneys for the defense, assigned misconduct on the part of the district attorney. There followed heated arguments between counsel, the court ruling: "The alleged assignments of error are denied. I will say this, however, that I have known this deputy district attorney for many years, and I cannot conceive of Mr. Hammon indulging, intentionally indulging in any signal system."

It will be noted that no offer was made to prove any of the charges made by counsel for the defense. When the serious charge was made by Mr. Rummel reflecting as it did upon the integrity of the deputy district attorney, it was but natural for him to reply with some heat. From the ruling of the court it must necessarily be assumed that no improper conduct was noticed by the judge. We find no prejudicial error on the part of the judge. The remarks made by the court concerning his personal acquaintance with the deputy district attorney and indicating the high regard in which the court regarded him were improper and should not have been made in view of the heated discussion in which counsel were engaged. However, it is very difficult to see any prejudice suffered by appellant on account of the court's remarks. No reflection whatever was cast upon the defendant. It is only fair to state that in this very long and difficult trial the court conducted the proceedings in a manner remarkably free from errors.

The judgments are affirmed.

McComb, J., *pro tem.*, and Crail, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 1, 1937.