El Pueblo de Puerto Rico, demandante y apelado, v. Nico-
lás Díaz Figueroa, acusado y apelante.

Número 15276.

*Sometido:* 17 de diciembre de 1952. *Resuelto:* 12 de febrero de 1953.

*Santos P. Amadeo, Rafael B. Pérez Marchand* y *Ernesto Rodríguez Aponte,* abogados del apelante; *Hon. Secretario de Justicia Interino Juan B. Fernández Badillo, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Rafael L. Ydrach Yordán. Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Un jurado en la Sección de San Juan del antiguo Tribunal de Distrito de Puerto Rico declaró culpable a Nicolás Díaz Figueroa de un delito de asesinato en segundo grado. El juez que presidió la vista dictó posteriormente una sentencia condenando al acusado y apelante a cumplir una pena de 10 a 15 años de presidio. El acusado ha apelado ante este Tribunal Supremo y ha señalado cinco errores que alega fueron cometidos por el tribunal sentenciador.

La prueba presentada por el ministerio público tendió a establecer su teoría al efecto de que el día 25 de noviembre de 1949, en horas de la mañana, el acusado visitó la oficina de administración de la plaza del mercado de Río Piedras portando un revólver y preguntando por Nicolás Díaz Jiménez, conocido por Colito; que el acusado estuvo allí toda la mañana, fué a almorzar y regresó pocos minutos después, entrando en la oficina y colocándose en el marco de una ventana contigua a la acera que rodea la plaza del mercado; que como a la una y media de la tarde el interfecto Nicolás Díaz Jiménez caminaba por la acera, cerca de la ventana y sin que hubiese mediado provocación ni discusión alguna el acusado le disparó, desde la ventana, al interfecto y que al tratar de huir este último de espaldas al acusado, el apelante disparó

dos tiros adicionales, hiriendo al interfecto en la parte de atrás del cuerpo y en la espalda.

La teoría del acusado fué una de defensa propia y la prueba presentada por el acusado, en síntesis, tendía a demostrar que esa tarde el acusado estaba en la oficina ya mencionada y que el interfecto penetró en la oficina y desde la puerta insultó al acusado, le hizo un disparo y el acusado, que estaba en la ventana, sacó su revólver y repelió la agresión disparándole al interfecto y que entonces este último hizo otro disparo y una bala se incrustó en la pared.

Los dos primeros errores señalados, que discutiremos conjuntamente, son los siguientes:

"Primer Error: La corte sentenciadora erró al permitir que el ministerio fiscal, al exponer la teoría del caso, hiciera manifestaciones imputándole al acusado y a otras personas haber tratado de intervenir con la investigación fiscal en la preparación de su defensa así como de que probaría estos hechos no obstante ser inadmisible cualquier evidencia que a tal fin se presentara por ser la misma inmaterial, irrelevante e impertinente y por tampoco tener relación alguna con el delito por el cual se procesaba al apelante.

"Segundo Error: La corte sentenciadora erró al admitir evidencia relacionada con la supuesta intervención del acusado y de otras personas con la investigación fiscal no obstante ser esa evidencia inmaterial, irrelevante e inadmisible por no tener relación alguna con el delito por el cual se procesaba al apelante."

En sus declaraciones preliminares al jurado, o sea, en la exposición de su teoría, el fiscal dijo, en parte, lo siguiente:

"Probaremos Sres. del Jurado, que sucedidos esos hechos así y abierta la investigación de El Pueblo representado por el Fiscal Padró Parés, inicia Don Augusto P. Álvarez una investigación empezando a tomar declaraciones juradas a los testigos de El Pueblo que habían sido ya investigados por el Fiscal de este Distrito; para que firmen por adelantado esas declaraciones, haciéndoles saber que 'el muerto al hoyo y arriba el pimpollo, que había que defender a brazo partido a Nicolás Díaz Figueroa';

valiéndose don Augusto P. Álvarez de la autoridad que tenía en aquél entonces como alcalde y haciendo uso de un policía insular y haciendo uso de Don Guillermo Estrella Frasqueri—este abogado que está aquí—para tomar esas declaraciones bajo juramento, bajo sello notarial, para frustrar de esa manera los fines de la justicia. Si logramos establecer esos hechos como esperamos hacerlo hoy, solicitaremos en su oportunidad un veredicto de Asesinato en Primer Grado."

Al terminar el fiscal de exponer su teoría, el acusado no formuló objeción ni excepción alguna a las manifestaciones ya transcritas del ministerio público. Sin embargo, al declarar el testigo del fiscal, Aníbal de Jesús, en cuanto a una entrevista del entonces Alcalde de Río Piedras, Augusto P. Álvarez, con varios testigos, en presencia del acusado y en relación con la declaración preliminar del ministerio público que ya hemos transcrito, la defensa se opuso a esa prueba y solicitó del tribunal inferior que instruyese al jurado que no considerase esa prueba ni considerase las referidas manifestaciones del fiscal. En ese momento, o sea, mientras declaraba el testigo Aníbal de Jesús, el juez que presidió la vista instruyó al jurado en la forma siguiente:

"Señores del Jurado, a ningún acusado le está prohibido por la Ley entrevistar a cualquier persona a los fines de la preparación de su defensa en su día. Esto como principio general y mucho menos cuando la persona entrevistada por el acusado aún no figura como testigo en acusación alguna contra el acusado ya que lo único que prohibe la Ley es que el Fiscal se entreviste con los del acusado una vez que éstos han sido juramentados en el acto del juicio.

". . . . . . . . .

". . . . . . . . .

"Dije que esto es como principio general porque estas reglas procesales tienen sus excepciones ya que es admisible la presentación en juicio de prueba de actos, conducta, declaraciones o apariencia de un acusado después de la comisión del delito de que se se le acusa, siempre que las circunstancias sean tales que de ellas se desprenda la inferencia de que tales actos, conducta, declaraciones o apariencia del acusado indiquen lo que en derecho se llama la conciencia del delito—'consciousness of guilt'.

"Esa es la instrucción que a juicio del acusado debo dar a ustedes y queda trasmitida en esa forma."

La prueba que presentó el fiscal a los fines de sostener aquella parte de su teoría que ya hemos transcrito y que ha sido impugnada ante nos por el acusado, consistió sustancialmente en lo siguiente:

Aníbal de Jesús, testigo ocular de los hechos, después de declarar sobre la forma y manera en que se hicieron los disparos, declaró que algunos días después del de los hechos lo fué a buscar el Lic. Tomás de Jesús Castro y fué con él a la oficina del Alcalde Augusto P. Álvarez y allí estaba el Alcalde Álvarez y el acusado; que allí estaban preparando la defensa del acusado y estaban allí reunidos los testigos de defensa; que el Alcalde Álvarez estaba explicando al acusado en cuanto a la forma en que él tenía que declarar en lo relativo a la posición en que "él tenía que estar parado al lado de la ventana"; que al testigo le preguntaron si él había hecho alguna declaración ante los fiscales y él contestó que efectivamente él la había hecho. La defensa repreguntó al testigo en cuanto a esa reunión en la oficina del alcalde y en la repregunta el testigo dijo que allí estaban presentes los abogados del acusado Félix Ochoteco y Rafael Rivera Zayas; que cuando llegaron los abogados estaba el Alcalde Álvarez explicando cómo él tenía que estar parado y que Álvarez dijo lo siguinte: "Porque si tú estás en esa forma puede que tú lo hayas visto con anticipación"; que el abogado Tomás de Jesús Castro le preguntó al testigo si él sabía algo y el testigo le contestó que sí y que él había declarado ante los fiscales y entonces el abogado Tomás de Jesús Castró le preguntó que cómo era su declaración y el testigo contestó que su declaración no incriminaba a nadie y entonces el referido abogado dijo que parecía que no lo habían llamado los fiscales; que el abogado Tomás de Jesús Castro le dijo al testigo, "Aníbal, tú eres el testigo que nos puedes salvar a nosotros" y entonces el mismo abogado le preguntó al acusado en cuanto a ciertos detalles sobre los hechos; siguió declarando el testigo que dos días an-

tes del juicio los abogados del acusado, el Lic. Ernesto Rodríguez Aponte, lo había ido a buscar a él a la casa pero no lo había localizado. Declaró que al celebrarse la entrevista en la oficina del Alcalde Álvarez este último le dijo al testigo: "Para cuando tú declares, fíjate cómo estaba Colito"; que el abogado Tomás de Jesús Castro le dijo entonces: "Abre el ojo, fíjate cómo estaba parado Colito."

Al exponer su teoría, el fiscal puede hacer referencia a cualquier hecho que, de acuerdo con las reglas de evidencia, fuere inseparable de los hechos imputados al acusado y puede aludir a hechos que necesariamente rodearon el delito, aunque algunos no integren el delito en sí. *Pueblo* v. *Beltrán*, 73 D.P.R. 509, 516; *Pueblo* v. *Pierantoni*, 60 D.P.R. 13; *Pueblo* v. *Juarbe*, 37 D.P.R. 463; *Pueblo* v. *Quiñones*, 69 D.P.R. 731. La doctrina aplicable se sintetiza en la siguiente forma en 23 C.J.S. 527, *et seq:*

"Al fiscal debe concedérsele una amplitud razonable en su declaración de apertura al jurado, pero independientemente de lo que disponga un estatuto o una regla de la corte en cuanto al contenido de tales declaraciones, esa amplitud y extensión caen dentro de la discreción del tribunal donde se celebró el juicio. Debe ser breve y general, y no detallado, y debe limitarse a declaraciones basadas en hechos que puedan ser probados, no debiendo incluir hechos que claramente son inadmisibles. La exposición de la teoría del fiscal no deberá referirse a nada que pueda tender impropiamente a causar prejuicio contra el acusado en la mente del jurado y, bajo esa regla, una declaración preliminar del fiscal que contenga insultos, epítetos ofensivos o argumentos no deberá ser parte de tal exposición. El fiscal puede generalmente trazar ampliamente los hechos que él, de buena fe, espera probar, y las inferencias legítimas que surjan de esos hechos y aún si él expone hechos que no sean luego objeto de prueba porque tales hechos sean en sí irrelevantes, o porque él no presentó evidencia de clase alguna o presentó evidencia inadmisible o incompetente para sostener esos hechos, tales declaraciones del fiscal no constituyen error, si él actúa de buena fe y con fundamentos razonables para suponer que él puede probar los hechos tal como él los expuso, especialmente

cuando esos hechos se refieren a la transacción o al acto que resultó directamente en la comisión del crimen. A fortiori, él puede exponer los hechos que él, de buena fe, espera probar, y que sean legalmente competentes. El tribunal en donde se celebró la vista debe requerir del fiscal que actúe de buena fe al exponer su teoría. La corte inferior tiene amplia discreción para determinar si el fiscal está actuando o no de buena fe, y necesariamente tiene que depender en la buena fe del fiscal al estar exponiendo la teoría."

Al mismo efecto véanse los casos de *United States* v. *Lanza*, 85 F.2d 544, *certiorari* denegado en 299 U.S. 609; *People* v. *Arnold*, 199 Cal. 471, 250 P. 168; *People* v. *Lima*, 146 P.2d 261, opinión sustituída en 154 P.2d 698, 25 Cal. 573; *People* v. *Pierson*, 159 P.2d 39, 69 Cal. App. 2d 285; *Commonwealth* v. *Meyers*, 139 Atl. 374.

Aun si el ministerio público en la exposición de su teoría se refiere a hechos que no son probados posteriormente por no haber sido admitida la prueba, si la cuestión de admisibilidad es debatible y si el fiscal ha actuado de buena fe y con fundamentos razonables para creer que la prueba sería admisible, no constituye error alguno el que el fiscal se refiriese a esos hechos. *People* v. *Stone*, 250 P. 659, 199 Cal. 610; *People* v. *Wollcott*, 30 P.2d 601, 137 Cal. App. 355; *People* v. *Donaldson*, 171 P. 442; *People* v. *Reitz*, 261 P. 526; *State* v. *Heinz*, 275 N.W. 10.

En el caso de California de *People* v. *Wong Hing*, 169 Pac. 357, 358, se indica lo siguiente:

"... Aun admitiendo, sin embargo, que no se ofreció evidencia alguna para sostener aquella parte de la declaración del fiscal que estamos discutiendo, no hay nada en el récord que tienda a demostrar que tales declaraciones se hicieron de mala fe o sin la intención de tratar de sostenerlas por medio de prueba."

En *People* v. *Gleason*, 127 Cal. 323, se resuelve lo siguiente:

"Un fiscal no es culpable de conducta impropia por el hecho de que haya incluído en su declaración de apertura hechos que él esperaba probar pero que posteriormente no probó, cuando no hay nada que indique que el fiscal intencionalmente se apartó de la verdad o que tuvo la clara intención de influenciar al jurado a través de declaraciones falsas."

En el caso de autos no solamente el fiscal actuó de buena fe al hacer las declaraciones que han sido impugnadas y que hemos transcrito, y no solamente él tenía motivos para creer que él iba a presentar prueba admisible en cuanto al contenido de tales declaraciones sino que él efectivamente presentó prueba tendente a demostrar que, en presencia del acusado, se hizo la tentativa de preparar o crear artificialmente cierta prueba, tal como surge del testimonio del testigo Aníbal de Jesús, según la hemos transcrito anteriormente. Lo declarado por Aníbal de Jesús era admisible en evidencia, ya que se refería a tentativas para preparar o entrenar testigos artificialmente, lo cual tendía a demostrar una conciencia o mente culpable de parte del acusado. Es admisible cualquier prueba que tienda a demostrar la fabricación o creación de prueba artificial por el acusado o con el consentimiento y autorización del acusado, ya que esa conducta constituye una admisión implícita al efecto de que es débil el caso del acusado. 2 Wigmore, *Evidence*, 120, *et seq.*, sección 278, 3ra. ed.; 22 C.J.S. 966, et seq., sección 633; 45 Yale L. J. 226; 59 Harv. L. Rev. 558; *People* v. *Kristy*, 245 P.2d 547 (Cal. 1952). Es admisible la prueba que tienda a demostrar el entrenamiento artificial de testigos o la tentativa para debilitar o modificar el testimonio de testigos. *Cleveland* v. *State*, 103 So. 707, 710. La tentativa de crear testimonios falsos es admisible en evidencia. *Allen* v. *United States*, 164 U.S. 492; *People* v. *Walker*, 221 P.2d 287 (Cal. 1950); *Hall* v. *Commonwealth*, 224 S.W. 492; *People* v. *Amaya*, 112 P.2d 942; *People* v. *Miller*, 66 P.2d 448 y véanse además los casos de *Wielson* v. *United States*, 162 U.S. 613;

*Tucker* v. *United States*, 151 U.S. 164. Es admisible cualquier tentativa del acusado de persuadir a un testigo a que haga una declaración distinta a su declaración jurada anterior. *United States* v. *Freundlich*, 95 F.2d 376. Son admisibles en evidencia los esfuerzos de una tercera persona para suprimir o fabricar evidencia si esos esfuerzos han sido realizados en presencia del acusado, ya que puede inferirse entonces que la tercera persona ha sido autorizada por el acusado para llevar a cabo tales tentativas. *People* v. *Moore*, 160 P.2d 857 (Cal.). Véase además el caso de California resuelto en el año 1952 de *People* v. *Kendall*, 244 P.2d 418.

En el caso de *Pueblo* v. *Marín*, 38 D.P.R. 666, se resuelve por este Tribunal Supremo que el hecho de que en la acusación no se haya alegado la ocultación del cadáver del interfecto y del crimen por parte del acusado, no impide al Pueblo en su discurso de apertura del caso hacer referencia a hechos relacionados con tal ocultación ni tampoco presentar prueba sobre tales hechos. Se resuelve que es admisible cualquier acto de un acusado que tienda a probar un esfuerzo o deseo de su parte de borrar la prueba del crimen, ya que tal prueba tiende a demostrar la condición de ánimo del acusado, no siendo necesario que en la acusación se aleguen tales hechos posteriores a la comisión del crimen. También ha resuelto este Tribunal que la fabricación de evidencia para establecer una coartada constituye una admisión implícita de culpabilidad. *Pueblo* v. *Delerme*, 51 D.P.R. 519. Véase además el caso de *People* v. *Lisenba*, 14 Cal. 2d 403, 416, confirmado por la Corte Suprema de Estados Unidos en 314 U. S. 219.

En el caso de autos el fiscal actuó en forma legalmente correcta al expresar lo ya indicado en su discurso de apertura y él presentó prueba admisible con relación a esa parte de su teoría, (1) pero aun asumiendo que el fiscal no hubiese actuado

---

(1) Los Lics. Félix Ochoteco y Rafael Rivera Zayas declararon como testigos negando que fuera cierto lo declarado por Aníbal de Jesús. Sin embargo, el problema planteado no es uno de credibilidad sino de admisibilidad de la declaración de Aníbal de Jesús.

en forma correcta no se nos ha demostrado que sus manifestaciones hayan ocasionado perjuicio al acusado, especialmente en vista de que, como hemos visto, el juez instruyó al jurado sobre el particular, en una forma legalmente válida. *Pueblo* v. *Piazza,* 60 D.P.R. 575; *Pueblo* v. *Pérez,* 46 D.P.R. 768; *Pueblo* v. *Marrero,* 48 D.P.R. 896; *Pueblo* v. *Rivas,* 68 D.P.R. 474. Aun si las manifestaciones hechas por un fiscal son impropias, si no hay base razonable para la inferencia de que ellas afectaron la conciencia del jurado, inclinándola en determinado sentido, y si esas manifestaciones del fiscal no han perjudicado los derechos sustanciales del acusado, el hecho de que el fiscal se haya expresado en esa forma no constituye un error perjudicial que dé lugar a la revocación de la sentencia. *Pueblo* v. *González,* 59 D.P.R. 97, 104; *Pueblo* v. *Colón,* 65 D.P.R. 760; *Pueblo* v. *Zayas Ortiz,* 65 D.P.R. 538; *Pueblo* v. *Rivera,* 64 D.P.R. 652; *Pueblo* v. *Carreras,* 62 D.P.R. 156. En *Pueblo* v. *Ojeda,* 66 D.P.R. 419, se resuelve que manifestaciones impropias aisladas de un fiscal al contrainterrogar un testigo no conllevan la revocación de la sentencia cuando la prueba de cargo es tan robusta y convincente que aun sin dichas manifestaciones el veredicto hubiera sido el mismo.

No se cometieron los dos primeros errores señalados.

■ Bajo el tercer error señalado el acusado-apelante alega que la corte sentenciadora erró al no declarar con lugar el *mistral* solicitado por la defensa por todo lo que había ocurrido durante el proceso contra el acusado-apelante, especialmente en relación con el incidente entre el ministerio fiscal y el testigo Augusto P. Álvarez. Al declarar el testigo Álvarez ocurrieron, en parte, los siguientes incidentes:

"Fiscal: P.—¿Usted ha dicho testigo, que Doña Ángeles Méndez que entonces era Tesorera es hoy el Alcalde (sic)? R.—Era Tesorera y es hoy interinamente Alcalde. P.—¿Entonces usted ya no es alcalde? R.—A menos que la Corte Suprema resuelva pues estoy en litigio. P.—¿Usted lo puso en litigio o a usted lo pusieron en litigio? Defensa: Nos oponemos Sr. Juez. Hon.

Juez: Se sostiene la objeción de la defensa . . . . . P.—¿Y Próspero Guerrero? R.—Próspero Guerrero estaba actuando en una especie de secretario. P.—¿Qué quiere decir eso 'de una especie de secretario'? R.—Porque él no era un secretario, era un escribiente. Él no toma dictados. Él es un infeliz. P.— Siendo un infeliz está colocado en la Universidad de Puerto Rico. ¿Usted no lo sabe? R.—No sé en qué capacidad. Defensa: Objetamos Sr. Juez a la línea de interrogatorio del Fiscal. Fiscal: Fíjese en la forma que ha contestado el testigo. Este testigo no es un vendedor de huevos; es un alcalde municipal. Nosotros no le hemos hecho esa pregunta y él ha dicho 'es un infeliz' como queriendo menoscabar la integridad del Sr. Próspero Guerrero que es un testigo de El Pueblo. ¿Qué autoridad tiene el testigo para decir que Próspero Guerrero es un infeliz? Yo puedo demostrar que no es ningún infeliz. Defensa: Vamos a solicitar que se eliminen del récord las manifestaciones del Fiscal tratando de argumentar y perjudicar los derechos de este acusado. Es una argumentación impropia. Él no puede hacer argumentaciones de esa naturaleza. Él no tiene derecho a argumentar con los testigos. Hon. Juez: Se elimina la argumentación pero se sostiene la pregunta. Fiscal: (Dirigiéndose al testigo) P.—Contésteme testigo. ¿Usted sabe si Próspero Guerrero—ese infeliz—es un alto empleado de la Universidad de Puerto Rico? R.—¿Alto? P.—Sí señor. R.—No. P.—¿No lo sabe? R.—No, señor. P.—¿Usted sabe si Próspero Guerrero —ese infeliz—ostenta el rango más alto que se puede tener en la organización de los Boys Scouts en Puerto Rico? Defensa: Esto es impropio. ¿Qué tiene que ver ese interrogatorio a que se está sometiendo al testigo con lo que se está ventilando aquí? El Fiscal tiene derecho a pedir la eliminación de ese adjetivo si lo cree impropio pero no tiene derecho a venir y traer aquí al Decano (*Dean*) del Colegio de Farmacia para demostrar que este señor no es un infeliz. Eso no se puede hacer. ¿No es lo cierto que Fulano de Tal tiene un alto cargo en la Universidad de Puerto Rico? Eso es impropio y nosotros objetamos la pregunta. Fiscal: Con ese mismo testigo podemos establecer eso. Con ese mismo testigo que ha traído la calificación de infeliz a un testigo de El Pueblo. Aprovecho la oportunidad ya que él lo ha calificado de infeliz ante el Jurado. Defensa: Ahora el compañero está más equivocado que al principio. Fiscal: Yo le voy a pedir ahora al compañero que aguante esa cosa. De-

fensa: ¿Cosa de qué? Fiscal: Diríjase al Tribunal estableciendo fundamentos legales sin referirse al hecho de si yo estoy o no estoy equivocado; sin plantear cuestiones de si esto se elimina o no. Yo lo que estoy es cumpliendo con mi deber. · Se puede establecer con este mismo testigo que está interesado y que está prejuiciado contra este testigo de El Pueblo. Es más, nosotros anunciamos que le íbamos a probar al Tribunal que este testigo es parte interesada en este proceso. Defensa: Vamos a solicitar que Su Señoría declare un *mistrial* por todo lo que está en este récord y que se está diciendo. No hay prueba ninguna. Que traiga prueba sobre esa naturaleza ante el jurado. Hon. Juez: Sin lugar la moción de mistrial. Instruyo de nuevo a los señores del jurado que no tomen en cuenta argumentaciones ni de la defensa ni del Fiscal. Toda esa argumentación está demás en un juicio por jurado. (Dirigiéndose a los señores jurados.) Ante ustedes, esas argumentaciones como si no se hubieran dicho. Lo único que está ante el Tribunal es si el Tribunal sostiene o no sostiene la pregunta del Fiscal. El Tribunal sostiene la pregunta del Fiscal. (Dirigiéndose nuevamente a los señores jurados.) El Tribunal ordena a ustedes que no tomen en consideración esas argumentaciones. Defensa: Con nuestra excepción. Cuando yo iba a argumentar el Fiscal me interrumpió . . . . . Fiscal: (Dirigiéndose al testigo.) P.— ¿Cuánto tiempo hacía, testigo, que Aníbal de Jesús ocupaba ese cargo de administrador de la plaza del mercado? R.—No puedo precisar, pero hacía como un año. P.—¿Usted puede recordar si él tenía ese cargo desde agosto de 1948? R.—No puedo recordar. P.—¿Para la fecha de los hechos usted ha dicho que como un año? R.—Me parece a mí, pero con temor a decir una cosa inexacta no me atrevo precisar cuántos meses hacía que era administrador. P.—Ahora, ¿se atrevería sin temor a precisar cuánto tiempo después de los hechos dejó de ser administrador de la plaza? R.—Dos o tres meses; no puedo precisar. P.— No puede precisar por temor a equivocarse. ¿Mire a ver testigo si 2 ó 3 días después de los hechos Aníbal de Jesús dejó de ser empleado de la oficina de administración del mercado para convertirse en empleado de la Tesorería Municipal? R.—Siempre fué empleado de la Tesorería Municipal. P.—¿Pero quiere decir que en lugar de estar en la oficina de administración de la plaza del mercado se trasladó a la Tesorería Municipal? R.—Sí ,señor. P.—¿Y sin temor también, mire a ver si varios días

después dejó de ser empleado del municipio? R.—Varios días no; varios, meses. P.—¿Ahí no hay temor? R.—No hay temor. P.—Y sin temor también . . . R.—Ja . . Ja . . Ja . . (El testigo se echa una carcajada.) Defensa: No hay derecho a ésto. Estamos obligados nosotros a hacer indicación al compañero—ya que estamos seguros que la Corte no participa de este criterio del compañero—que no puede dirigirse contra un testigo en forma alguna que pueda quebrantarle como tal testigo. El compañero Fiscal como estribillo—cuando dijo el testigo que por temor no podía referirse a una fecha exacta—entonces cada vez que le hace una pregunta dice 'por temor', 'sin temor', etc. Verá Vuestro Honor que ese procedimiento ante un jurado es impropio en cuanto concierne al trato que debe de tenerse a un testigo tanto por los abogados como por el Fiscal. Invitamos a Vuestro Honor que coja todo el interrogatorio del Fiscal y verá que 'con temor', 'con temor', 'sin temor', 'sin temor', etc. Creemos que estamos obligados a pedir a Vuestro Honor que le indique al compañero Fiscal que esa forma de preguntar se refleja en cuanto al testigo. El Sr. Ledesma se ríe, para el récord. Da ganas de reír. Hon. Juez: Se ordena al Fiscal que haga la pregunta eliminando esa parte objetada. Defensa: El testigo tiene derecho a que se le respete de acuerdo con la ley. Fiscal: Ahora nosotros objetamos el comentario que ha hecho mi distinguido compañero y profesor de derecho. Está demás un comentario en cuanto a si el testigo tiene o no derecho a que se le respete. Hon. Juez: Adelante . . . . P.—¿Testigo, para mayo de 1950, Su Señoría era alcalde de Río Piedras? R.—Me parece que sí. P.—Vamos a ver si podemos asegurar esto un poquito. Usted debe saber cuándo se le suspendió de empleo y sueldo como alcalde. Defensa: Nos oponemos a las manifestaciones del Fiscal de que al testigo se le suspendió de empleo y sueldo. Fiscal: Está retirada la pregunta. Hon. Juez: Está retirada la pregunta, no hay nada ante la corte. Fiscal: (Dirigiéndose al testigo.) P.—El hecho cierto es que usted dejó de ser alcalde de Río Piedras y yo pregunto que si para mayo de 1950 había dejado de ser alcalde. R.—No sé si fué en mayo o en abril. P.—¿Diga testigo, usted no tiene ningún interés en este procedimiento? R.—Solamente el que se haga justicia. P.—¿Entonces es el interés que puede tener cualquier ciudadano particular? R.—Cualquier ciudadano particular. P.—¿Sin haber intervenido en nada en este procedimiento? R.—Exacto. Defensa: Sr. Juez, ésa es una imputación muy seria que se le

hace al testigo. Nos oponemos. Hon. Juez: Ya él contestó que no intervino. Defensa: Solicitamos que Su Señoría no permita que el Fiscal haga preguntas que resulten lesivas al testigo. Hon. Juez: Ya no hay nada ante la corte; ya él contestó que no ha intervenido. Esa es una cuestión terminada. Defensa: Nosotros tomamos excepción. Fiscal: (Dirigiéndose al testigo.) P.—¿Debemos entender que usted no ha intervenido en nada en este procedimiento? Defensa: Nos oponemos. Hon. Juez: Ya él dijo que no ha intervenido. Fiscal: Yo quiero puntualizar para preguntar sobre hechos específicos. Defensa: Yo quisiera estar en mejores condiciones para orientar al distinguido fiscal que estos procedimientos . . . Hon. Juez: La objeción no debe ser así. Defensa: No es ninguna objeción. Es una petición para que se me aclare. Cuando el compañero dice que 'estos procedimientos' que me diga cuál es el procedimiento. Fiscal: Con este procedimiento que se ventila. Yo no sé decirlo bien. Si se dice 'proceso' pues yo digo proceso. Defensa: El compañero tal parece que lo que quiere es presentarme a mí como un maestro para él para que el jurado me coja cierto repelillo, pero esto no es para denotar ningún estado de superioridad. Fiscal: ¿Entonces no ha pasado nada? Defensa: No ha pasado nada. Hon. Juez: Adelante entonces. Fiscal: (Dirigiéndose al testigo.) P.—¿Testigo, está claro que usted no ha intervenido nunca en apoyo ni relacionado con este proceso de El Pueblo de Puerto Rico contra Nicolás Díaz Figueroa? Defensa: Ahora yo voy a hacer la objeción de ley. El testigo ahora mismo está interviniendo en este proceso como testigo del acusado. Si el fiscal lo que tiene en mente es preguntar al testigo sobre alguna intervención ilegítima o ilegal de él en este proceso, entonces lo mejor sería—y yo no tendría objeción ninguna—que le hiciera las preguntas específicas y aun sugestivas porque si no la pregunta es demasiado vaga. Fiscal: Eso no es ninguna objeción legal. Eso, permítame el compañero que le diga, es una interrupción. Si la pregunta es vaga, el testigo no ha dicho que no entiende. Si lo dice yo se la aclaro. Defensa: Yo tengo interés en que más tarde en la argumentación no se hable de una intervención que no se aclaró. Hubo intervención administrativa cuando él suspendió a este acusado de empleo y sueldo. Eso es lo que yo quiero decir. Hon. Juez: Eso no sería así. Adelante Fiscal. Fiscal: (Dirigiéndose al testigo.) P.— ¿Testigo, usted ha intervenido con los testigos que habrían de entender en este caso? R.—No. Tan sólo ordené una investi-

gación de las cosas que habían ocurrido. P.—¿La pregunta es que si usted ha intervenido personalmente con los testigos que habrían de declarar en este proceso? R.—Llamé a todos los testigos para que me informaran qué había pasado en la plaza del mercado. P.—¿Entre esos testigos debo entender que se encontraba el acusado? R.—No, porque estaba preso. P.—¿Pero más tarde? R.—Me parece que sí. P.—¿Vamos a ver si podemos asegurar? R.—Estoy casi seguro que estaba. P.—¿Usted habló con el acusado una vez? R.—Muchas veces. P.—¿Está seguro? R.—En cuanto a eso estoy seguro. P.—¿Dígame, es o no cierto que una vez que usted hablara con el acusado sobre los hechos de este caso y él le dijera cómo ocurrieron esos hechos, usted le dijo: 'No, eso no puede ser así; tú tienes que declarar así'? R.—Eso es falso de quien lo diga. P.—¿Eso es falso? R.—Me respeto y sé también respetar y como me respeto soy incapaz de intervenir así de esa manera. P.—¿Y la intervención que usted tuvo para investigar estos hechos fué cuando sucedieron? R.—Si señor . . . . . . . . . . . . . P.—¿Alguna otra cosa con relación a Próspero Guerrero que usted me pueda informar o se le olvidó todo? R.—Yo no padezco de amnesia. Esas preguntas . . . Defensa: Nos oponemos a la pregunta. Fiscal: Vamos a solicitar al tribunal que instruya al testigo que conteste mis preguntas y que no haga comentarios contra este Fiscal porque no lo vamos a permitir ni como Fiscal ni como nada. Defensa: El compañero Fiscal ha escuchado una ofensa según él y el récord es la mejor memoria que puede haber en este tribunal y las manifestaciones del compañero Fiscal continúan desviando el procedimiento en este caso. Hon. Juez: ¿Cuál es la cuestión? Defensa: Vuestro Honor ha presenciado este incidente y ha escuchado las manifestaciones del Fiscal y ha escuchado las manifestaciones del testigo y entendemos que este ambiente está perjudicando completamente los derechos del acusado y pedimos un *mistrial* en este momento. El Fiscal desafiando al testigo. Fiscal: Me dijo el compañero Rodríguez Aponte que lo que dijo fué 'amnesia' y entonces yo entendí mal. Si yo entendí mal lo que hay que hacer es aclarar y no ha pasado nada. Defensa: Eso no es así. Hon. Juez: Le parece al tribunal que esto es una tormenta en un dedal de agua. Así como un testigo tiene derecho a que se le proteja y que el tribunal lo protege, también el Fiscal tiene derecho a interpretar una contestación en un sentido y protestar. El testigo aclara y ahí termina la interrupción. No ha podido suceder nada si se deja

al propio testigo aclarar. Yo creo que son los abogados y el Fiscal quienes están armando esas tormentas en un dedal de agua y el tribunal quiere hacer constar que desde que empezó este proceso empezó ese dime y direte tanto así que el tribunal ha tenido que estar llamando la atención tanto a la defensa como a los fiscales sobre esa conducta. Si no se actuase en esa forma no ocurrirían esos incidentes desagradables que no afectan los derechos del acusado en nada. Defensa: Nosotros tenemos solicitada una decisión de que la corte decrete un mistrial por la conducta ofensiva del Fiscal desafiando en corte abierta al testigo. Ya no se trata de dimes y diretes. Eso en un juicio ante jurado es perjudicial. Hon. Juez: El tribunal tiene que saber la contestación. Léase la contestación y no se resolverá nada hasta que no se conozca la contestación del testigo. Taquígrafo: P.—¿Alguna otra cosa con relación a Próspero Guerrero que usted me pueda informar o se le olvidó todo? R.—Yo no padezco de amnesia. Esas preguntas . . . . . Hon. Juez: Oído el récord se declara sin lugar la moción de mistrial. Defensa: Que se nos anote una excepción. Fiscal: Nada más con el testigo."

No procede la concesión de una moción de *mistrial* si no se demuestra que el acusado ha sufrido un daño positivo o se han perjudicado sus derechos sustanciales o a menos que sea evidente que no ha habido un juicio justo e imparcial. *Avery* v. *State*, 70 S.E.2d 716; *State* v. *Frazer*, 248 S.W.2d 645; *Johnson* v. *State*, 72 S.E.2d 291.

En el caso de autos el fiscal fué agresivo en su interrogatorio del testigo Álvarez pero no creemos que la forma en que él se manifestó signifique que no hubo un juicio justo e imparcial o que se lesionaron los derechos sustanciales del acusado, especialmente en vista de que el juez que presidió la vista intervino en repetidas ocasiones y formuló inmediatamente instrucciones adecuadas al jurado. Incidentalmente, en el caso de *Pueblo* v. *Rivera*, supra, se resuelve que la negativa a conceder un *mistrial* fundado en que al sentar las bases para impugnar a un testigo el fiscal impropiamente dijo que iba a meterlo a la cárcel por perjurio, no será alterada en apelación de aparecer que la corte inferior inmediata-

mente instruyó ampliamente y terminó diciéndole al jurado que debía borrar tales manifestaciones de su mente, resolver el caso por sus propios méritos de acuerdo con la evidencia que se presente y juzgar a cada testigo de acuerdo con su declaración y la forma en que declare y no por lo que el fiscal dijera. Véase además el caso de *Pueblo* v. *Carreras*, supra. En *Pueblo* v. *Pérez*, supra, se resuelve que cuando manifestaciones de un fiscal en presencia del jurado no han causado perjuicio alguno al acusado ante dicho cuerpo ellas no son motivo de revocación.

■■ Un fiscal no debe atropellar a un testigo ni dirigirse a él en forma abusiva ni hacer incriminaciones a los testigos que carezcan de base (23 C.J.S. 521), pero aun de conducirse el fiscal en forma incorrecta, con respecto a los testigos, ello no debe ser motivo de revocación a menos que se demuestre que su conducta causó perjuicio en la mente del jurado y que el juicio no ha sido justo e imparcial. 23 C.J.S. 1154; 24 C.J.S. 896, et seq.; *People* v. *Gidney*, 10 Cal.2d 138; *People* v. *Matthew*, 228 P. 424, 194 Cal. 273. Cae dentro de la discreción del juez que presidió la vista en el tribunal inferior el conceder o denegar una moción de *mistrial* a base de la conducta impropia del fiscal y el ejercicio de esa discreción no debe ser revocado o dejado sin efecto en apelación a menos que se demuestre claramente que el juez cometió un abuso de discreción. 24 C.J.S. 772; *State* v. *Hamilton*, 102 S.W.2d 642. En el caso de autos el juez que presidió la vista en el tribunal inferior no abusó de su discreción al declarar sin lugar la moción de *mistrial*.

■ El cuarto error señalado por el acusado-apelante es alegado en la forma siguiente:

"La Corte sentenciadora erró al tratar discriminatoriamente a los abogados del apelante insinuando que éstos eran igualmente culpables que el ministerio fiscal por los incidentes que surgieron en el curso del proceso perjudicando así el derecho del apelante a un juicio imparcial."

Al ocurrir los incidentes que ya hemos transcrito en cuanto al testimonio del testigo Augusto P. Álvarez, ocurrió lo siguiente, tal como hemos transcrito anteriormente:

"P.—¿Alguna otra cosa con relación a Próspero Guerrero que usted me pueda informar, o se le olvidó todo? R.—Yo no padezco de amnesia. Esas preguntas . . . Defensa: Nos oponemos a la pregunta. Fiscal: Vamos a solicitar al tribunal que instruya al testigo que conteste mis preguntas y que no haga comentarios contra este Fiscal porque no lo vamos a permitir ni como Fiscal ni como nada. Defensa: El compañero Fiscal ha escuchado una ofensa según él y el récord es la mejor memoria que puede haber en este tribunal y las manifestaciones del compañero Fiscal continúan desviando el procedimiento en este caso. Hon. Juez: ¿Cuál es la cuestión? Defensa: Vuestro Honor ha presenciado este incidente y ha escuchado las manifestaciones del Fiscal y ha escuchado las manifestaciones del testigo y entendemos que este ambiente está perjudicando completamente los derechos del acusado y pedimos un *mistrial* en este momento. El Fiscal desafiando al testigo. Fiscal: Me dijo el compañero Rodríguez Aponte que lo que dijo fué 'amnesia' y entonces yo entendí mal. Si yo entendí mal lo que hay que hacer es aclarar y no ha pasado nada. Defensa: Eso no es así. Hon. Juez: Le parece al tribunal que esto es una tormenta en un dedal de agua. Así como un testigo tiene derecho a que se le proteja y que el tribunal lo protege, también el Fiscal tiene derecho a interpretar una contestación en un sentido y protestar. El testigo aclara y ahí termina la interrupción. No ha podido suceder nada si se deja al propio testigo aclarar. Yo creo que son los abogados y el Fiscal quienes están armando esas tormentas en un dedal de agua y el tribunal quiere hacer constar que desde que empezó este proceso empezó ese dime y direte, tanto así que el tribunal ha tenido que estar llamando la atención tanto a la defensa como a los fiscales sobre esa conducta. Si no se actuase en esa forma no ocurrirían esos incidentes desagradables que no afectan los derechos del acusado en nada. Defensa: Nosotros tenemos solicitada una decisión de que la corte decrete un *mistrial* por la conducta ofensiva del Fiscal desafiando en corte abierta al testigo. Ya no se trata de dimes y diretes. Eso en un juicio ante jurado es perjudicial. Hon. Juez: El tribunal tiene que saber la contestación. Léase la contestación y no se resolverá nada hasta que no se conozca la contestación del tes-

tigo. Taquígrafo: P.—¿Alguna otra cosa con relación a Próspero Guerrero que usted me pueda informar, o se le olvidó todo? R.—Yo no padezco de amnesia. Esas preguntas . . . Hon. Juez: Oído el récord se declara sin lugar la moción de *mistrial*. Defensa: Que se nos anote una excepción. Fiscal: Nada más con el testigo."

Naturalmente, el juez que preside una vista criminal siempre debe actuar en tal forma que le dé la impresión al jurado de que el juez es imparcial, y no favorecer a ninguna de las partes. *Pueblo* v. *Acevedo*, 35 D.P.R. 966. Un juez no debe hacer comentarios de clase alguna, en presencia del jurado, que tiendan a demostrar su opinión sobre los hechos (*Seward* v. *State*, 59 So.2d 529 (1952)), y la determinación de si un comentario del juez, en el transcurso del juicio, es perjudicial al acusado gira alrededor de dicho comentario, de la influencia que el mismo pueda ejercer en el jurado y de sus efectos en relación con las oportunidades de defensa del acusado, debiendo ser revocada la sentencia cuando los comentarios del juez son de tal naturaleza que tiendan razonablemente a influir en la mente del jurado contra dicho acusado, privándole de su derecho a un juicio justo e imparcial. *Pueblo* v. *Bartolomei*, 70 D.P.R. 698. De otro lado el juez tiene la facultad y el deber de tomar aquellas medidas que garanticen el establecimiento de un ambiente judicial de dignidad, eficiencia y serenidad. En el caso de *United States* v. *Dennis*, 183 F.2d 201, 225, se imputó como error la práctica del juez que presidió la vista en el tribunal inferior de formular repetidas advertencias y reprimendas a los abogados. Una opinión del Juez Learned Hand resolvió que tales advertencias no habían inclinado la balanza en contra del acusado ni privó al acusado de una oportunidad razonable de presentar su caso. Se indica que lo que hizo el juez fué tratar de mantener el juicio dentro de ciertas fronteras de corrección, y en el curso de la opinión se dice lo siguiente:

"La justicia puede ser derrotada tan fácilmente por la flaqueza y debilidad de un juez como por su tiranía; los jueces

imparciales necesitan una mano firme al igual que una determinación constante para dar a cada cual lo que se merece . . . . . el juez no tiene que tener la imperturbabilidad de un 'Rhadamanthus'.

Una corte puede prevenir, amonestar y formular advertencias al abogado de un acusado, siempre y cuando que lo haga en tal forma que no someta a tal abogado al ridículo, al desprecio o al discrimen y siempre y cuando que no se le ocasionen prejuicios contra el acusado en la mente del jurado. 23 C.J.S. 340; *Moore* v. *United States*, 132 F.2d 47, *certiorari* denegado en 318 U.S. 784; *People* v. *Barrow* 145 P.2d 42 (Cal.); *People* v. *McCoy*, 153 P.2d 315, 25 Cal. 2d 177; *People* v. *Moore*, supra; *United States v. Minkoff*, 137 F.2d 402. Lo esencial es mantener la dignidad y el funcionamiento rápido y eficiente de la corte sin causar prejuicio contra el acusado. *Lambert* v. *United States*, 101 F.2d 960; *United States* v. *Siden*, 293 Fed. 422; *People* v. *Whittaker*, 63 P.2d 1202 (Cal.); *United States* v. *Brandt*, 196 F.2d 653.

En el caso de *Pueblo* v. *Munera*, 39 D.P.R. 295, se resuelve que cuando el abogado defensor se excede en sus derechos al repetir preguntas a los testigos la intervención del juez para restringir las repeticiones innecesarias no constituye error alguno. En este caso el juez que presidió la vista en el tribunal inferior expresó un comentario al efecto de que se estaba sometiendo a una testigo a una gran tortura moral y se resolvió que eso no constituía un error que justificase la revocación de la sentencia. En *Pueblo* v. *Marrero*, supra, el juez amenazó castigar a ciertos testigos por desacato, si no hablaban en alta voz. Se resolvió que tal comentario estaba justificado en vista de todos los incidentes ocurridos en el juicio y que ello no causó perjuicio alguno al acusado. Véanse además los casos de *Pueblo* v. *Mercado, (a) Tito de Oro*, 46 D.P.R. 152; *Pueblo* v. *Aponte*, 26 D.P.R. 604. En *Pueblo* v. *Salas*, 60 D.P.R. 692, se resuelve que el hecho de que un juez advierta a un testigo de su deber de decir la verdad no demuestra prejuicio alguno contra el acusado. Véanse además

los casos de *Pueblo* v. *Millán*, 46 D.P.R. 889; *Pueblo* v. *Quiñones*, 46 D.P.R. 228; *Pueblo* v. *León*, 53 D.P.R. 429.

En el caso de California de *People* v. *Barrow*, supra, hubo varias discusiones ásperas entre el fiscal y el abogado del acusado. El juez inferior se refirió a esa conducta como "teatral" (*stageplay*) y les advirtió a los abogados que desistieran de esa conducta, diciéndoles que ellos tendrían que continuar el juicio con el decoro apropiado. Se resolvió que tal comentario no constituía una conducta impropia de parte del juez ya que era su deber mantener el decoro judicial.

En *State* v. *Robinson*, 58 So.2d 408 (1952), el juez indicó que él no permitiría que se formulasen preguntas insultantes a los testigos, y se resolvió que tal comentario no constituía un error que diese lugar a la revocación de la sentencia. En *State* v. *Birchfield*, 70 S.E.2d 5 (1952), se resuelve que la tentativa del juez para requerir a uno de los acusados a que observase las reglas de evidencia no privó al acusado de su derecho fundamental a un juicio ante un juez imparcial y ante un jurado que no estuviese prejuiciado, en una atmósfera de calma judicial.

En el caso de autos el juez actuó en forma completamente apropiada y correcta al advertirle a los abogados del acusado y al fiscal que desistieran de enfrascarse en disputas y argumentos innecesarios. Él no se limitó a formular su advertencia al abogado del acusado sino que se dirigió tanto a los abogados del acusado como al fiscal, lo cual implicaba una ausencia de prejuicio y de discrimen. *Maxwell* v. *State*, 64 S.W.2d 79; *State* v. *Cohen*, 255 Pac. 910. El juez no sometió a los abogados del acusado al ridículo o al desprecio y sus manifestaciones no tendían a crear prejuicio en la mente de los jurados. *People* v. *Emmett*, 12 P.2d 92.

No se cometió el cuarto error señalado.

En su quinto y último error señalado el acusado-apelante alega que él no tuvo un juicio justo e imparcial porque uno de los jurados, el señor Joaquín Ledesma, demostró estar prejuiciado contra el acusado "según ello surge de sus

manifestaciones ante el tribunal mientras interrogaba a uno de los testigos de la defensa." ·

El testigo de la defensa, Juan Clemente, empezó a declarar que por una ventana él observó que el acusado estaba dentro de la oficina en la plaza de mercado de Río Piedras; que llegó "Colito", insultó al acusado y le disparó un tiro y que inmediatamente el acusado disparó otro tiro; que allí se dispararon de seis a siete tiros y que había una distancia como de cinco a seis pies entre el acusado y "Colito" cuando se dispararon los primeros tiros. Anteriormente se había declarado que una bala se había incrustado en la pared como a nueve pies del piso. Entonces el jurado, Sr. Joaquín Ledesma, formuló el siguiente interrogatorio:

"Jurado Sr. Ledesma: P.—¿Sabía usted cuál era el propósito del acusado de estar allí? R.—Bueno, yo oí diciendo que se llevaba a cabo una investigación y que él fué a recoger un dinero. P.—¿A quién se lo oyó decir? R.—Al mismo Próspero y Aníbal que lo había dicho; y él fué—según me dijeron—a recoger el dinero. P.—¿A qué distancia estaba Colito del acusado en el momento en que profirió las palabras esas; la mentada de madre que usted dice? R.—Estaba cerca, como de 5 a 6 pies. P.—¿Y a 5 ó 6 pies le hizo un disparo a boca de jarro por encima de Próspero en la forma que usted y el fiscal han ilustrado? ¿Le tiró por encima de Próspero? R.—Por encima de Próspero tuvo que ser. P.—¿Y a 5 pies, desde la posición en que estaba y tirando él alante, no hirió a Próspero? R.—No señor, no lo hirió. P.—Nada más. Defensa: ¿Usted sabe si él era tirador; si había estado en el Ejército? R.—No sé si era tirador. P.—¿Y a usted le extrañaría que una persona no hiciera blanco? R.—No señor. P.—¿Usted dice que él estaba doblado? R.—Si señor. P.—¿No sería ésa la bala que cogió para arriba? R.—Sí señor, podría ser. P.—Nada más. Jurado Sr. Ledesma: P.—¿De acuerdo con lo que usted ha dicho la bala que está en el seto está a 9 pies de altura? R.—Si señor. P.—Es decir, que si él está en la puerta y tira sobre un ángulo recto y no hay nada más que 5 pies, la trayectoria de la bala no puede subir hasta 9 pies de alto a menos que no sería un tiro de aguaje . . . . Defensa: Solicitamos que se instruya al Sr. Jurado que no argumente. Hon. Juez: No argumente. El tribunal instruye al jurado Sr.·

Ledesma que eso como pregunta es demasiado pregunta. Jurado Sr. Ledesma: Yo quería traer eso para dentro de mi conocimiento que yo tengo de balística hacer mis conclusiones. Honorable Juez: Que se elimine esa pregunta. Defensa: Que quede en el récord. Hon. Juez: Que quede en récord, pero se instruye a los señores del jurado que no tomen en consideración, no tomen en consideración para nada, esa parte del interrogatorio del Sr. Ledesma."

Realmente la observación formulada por el jurado Ledesma en cuanto a que la trayectoria de la bala no podía subir hasta 9 pies de alto a menos que no se tratase de un "tiro de aguaje", equivalía a la expresión de una impresión inmediata en cuanto a la trayectoria de la bala y en cuanto a la distancia entre el acusado y el interfecto. Las observaciones del jurado Ledesma se refirieron a un punto importante en la teoría de la defensa. Sin embargo, aun si el jurado Ledesma se desvió de su función usual como jurado, y aun si la observación por él expresada se excedió de los límites del interrogatorio usual, ello no implica que ese jurado hubiese estado prejuiciado en contra del acusado, hasta el punto de justificar a este Tribunal que revoque la sentencia dictada, especialmente en vista de que el juez que presidió la vista en el tribunal inferior le llamó inmediatamente la atención al jurado Ledesma en cuanto a que se abstuviera de expresar argumentos, e instruyó además a todos los miembros del jurado que no tomasen en consideración las observaciones ya transcritas del jurado Ledesma. Los jurados no son abogados ni conocen los límites que impone la ley en cuanto al desarrollo de un interrogatorio. Lo que hizo el jurado Ledesma fué expresar espontáneamente su reacción en cuanto a un aspecto de la prueba, a los fines de esclarecer tal aspecto del caso. Ello no significa que él estuviese prejuiciado contra el acusado hasta el punto de implicar la inobservancia de un juicio justo e imparcial.([2]) En términos generales un vere-

([2]) A través del proceso el jurado Ledesma hizo otras preguntas pero ellas fueron completamente legítimas y dentro del curso normal del interrogatorio.

dicto no debe ser dejado sin efecto a base de la conducta impropia de un jurado a menos que ella sea de tal carácter que demuestre una mala intención de parte del jurado o que afecte la imparcialidad del jurado y evite el ejercicio de la razón y de un juicio sereno por ellos en cuanto a los hechos del caso. 53 Am. Jur. 643. El criterio esencial se refiere a la cuestión de si los derechos sustanciales del acusado han sido lesionados y si una revocación por tal motivo es exigida a los fines de garantizar una cabal justicia para el acusado y una debida administración de la ley. Es natural que un jurado forme algunas impresiones según se desarrolla el caso pero ellas pueden ser, y muchas veces son, cambiadas al terminarse la totalidad de la prueba y en vista de las instrucciones de la corte. *McGuire* v. *Amyx*, 297 S. W.968.

 Debe presumirse que el jurado basó su veredicto en la prueba presentada. *Pueblo* v. *Emmanuelli*, 67 D. P. R. 667; *State* v. *Robidou*, supra; *Pueblo* v. *Báez*, 45 D.P.R. 512. Esa presunción no ha sido rebatida en el caso de autos. En cuanto al interrogatorio de testigos por el jurado, véase la anotación en 159 A.L.R. 347.

*No se cometieron ninguno de los errores señalados por el acusado-apelante y, por lo tanto, la sentencia debe ser confirmada.*